## HENRY v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted November 3, 1919.
Decided December 1, 1919.)

No. 3203.

1. EMBEZZLEMENT �köm22—VALUE OF ARTICLE AN ESSENTIAL ELEMENT.

Under Code of Law, § 834, and section 851a, as added by Act March 3, 1913, fixing degrees of embezzlement, and providing different punishments for agents, employés, etc., embezzling property, according as the value of the embezzled article exceeds or does not exceed $35, it is necessary to allege and prove that the value of the property was over $35 in order to sustain a conviction for the greater offense.

2. EMBEZZLEMENT ⊃44(3)—EVIDENCE INSUFFICIENT TO SUSTAIN VERDICT AS TO VALUE.

In a prosecution for embezzling stock certificates, evidence that, when the owner deposited the certificates with accused for sale, they discussed a tentative selling price, and that the certificates were later pledged by accused as collateral security for a loan of $4,000, is insufficient to sustain a verdict that the value of the stock exceeded $35, as required by Code of Law, § 834, and section 851a, as added by Act March 3, 1913, providing different punishments according as the value of the embezzled property exceeds or does not exceed $35.

3. EMBEZZLEMENT ⊃48(1)—INSTRUCTION THAT IT WAS UNNECESSARY TO PROVE VALUE ERRONEOUS.

In prosecution for embezzling stock certificates, under Code of Law, § 834, and section 851a, as added by Act March 3, 1913, providing different punishments according as the value of the embezzled article exceeds or does not exceed $35, an instruction that it was unnecessary for the government to prove market value of the stock, etc., held erroneous.

4. CRIMINAL LAW ⊃338(1), 452(1)—METHOD OF PROVING VALUE OF EMBEZZLED STOCK CERTIFICATES.

Where the market value of embezzled stock certificates cannot be established, because the Stock Exchange was closed at the time involved, the actual value of the stock may be proved by testimony of persons familiar with the affairs of the company, its assets, and the dividend-earning capacity of the stock, and by individual sales of the stock at about the date the alleged embezzlement occurred.

5. CRIMINAL LAW ⊃827—INADEQUATE REQUEST SUFFICIENT TO REQUIRE INSTRUCTION ON ISSUE OF DEGREE OF OFFENSE.

In a prosecution for embezzling stock certificates, under Code of Law, § 834, and section 851a, as added by Act March 3, 1913, providing different punishments according as the value of the article exceeded or did not exceed $35, a requested instruction that, in case a verdict of guilty was returned, the jury must determine the value of the certificates from the evidence, etc., held sufficient to impose upon the court the duty of properly instructing upon the issue of value.

6. EMBEZZLEMENT ⊃52—CONSTITUTING A SINGLE OFFENSE.

Where accused embezzled several stock certificates by a single act, only one offense was committed, although the stock was owned by two people.

Smyth, Chief Justice, dissenting in part.

Appeal from the Supreme Court of the District of Columbia.

John William Henry was convicted of embezzlement and appeals. Reversed and remanded for a new trial.

⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

D. T. Wright and T. M. Wampler, both of Washington, D. C., for appellant.

J. E. Laskey, U. S. Atty., and J. B. Archer, Asst. U. S. Atty., both of Washington, D. C.

VAN ORSDEL, Associate Justice. This appeal is from a judgment adjudging appellant, defendant below, guilty of the crime of embezzlement.

Defendant was a member of a partnership doing a banking and stock brokerage business in the District of Columbia under the firm name of Lewis Johnson & Co. The charge is that certain certificates of corporate stock were deposited with defendant and one Woodruff for sale, and wrongfully and feloniously converted to their own use by hypothecating them as collateral security for a loan negotiated through a bank in this city. The indictment was in four counts, but it was submitted to the jury on the first and third. John Helmus owned the certificates set out in count 1, and Mary E. Helmus the certificates in count 3. The two offenses charged, growing out of the same transaction, were consolidated in a single trial.

Section 834 of the Code, under which defendant was indicted, provides as follows:

"If any agent, attorney, clerk, or servant of a private person or copartnership, or any officer, attorney, agent, clerk, or servant of any association or incorporated company, shall wrongfully convert to his own use, or fraudulently take, make away with, or secrete, with intent to convert to his own use, anything of value which shall come into his possession or under his care by virtue of his employment or office, whether the thing so converted be the property of his master or employer or that of any other person, copartnership, association or corporation, he shall be deemed guilty of embezzlement, and shall be punished by a fine not exceeding one thousand dollars, or by imprisonment for not more than ten years, or both."

The degree of the offense, however, is fixed by the provisions of section 851a of the Code (as added by Act March 3, 1913, c. 107, 37 Stat. 727), as follows:

"Whoever shall be guilty of any offence defined in sections eight hundred and thirty-four * * * of the Code of Law of the District of Columbia shall, where the thing, evidence of debt, property, proceeds or profits be of the value of not more than thirty-five dollars, be punished by imprisonment for not more than one year or a fine of not more than five hundred dollars, or both."

On a verdict of guilty as indicted, defendant was sentenced on each count to imprisonment in the penitentiary for a term of four years.

[1, 2] To sustain a conviction under the statute of the greater offense, it must be alleged and proved that the value of the property embezzled is over $35. In the present case, the value of the stock was alleged; but the government failed to adduce proof of either its actual or market value. There is evidence that a tentative selling price was discussed between the owner and defendant at the time the certificates were deposited for sale. It also appears that they were hypothecated as collateral security for a loan of $4,000. Such evidence is not sufficient to justify an inference of the actual or mar-

ket value of the stock at the date of its conversion. It creates, at most, an inference of indefinite value. To the same effect is a mere discussion or suggestion of a selling price between the parties. There are two elements which enter into a loan upon collateral security—the credit of the borrower, and the value of the property hypothecated. No legal inference can be indulged that the value of the property put up as security is greater than or equal to the amount of the loan. Its mere function as collateral is not even proof of either its actual or market value.

[3] In any event, the conviction for the greater offense cannot be sustained; since the court instructed the jury that— .

"It is not necessary that the government should prove the market value of the stock of the Mergenthaler Linotype Company. The statute under which the indictment was found is satisfied if it had any value at the time it was hypothecated, and the fact that the money was borrowed on the security of this stock, if it was, is evidence of value."

The value of the property converted is a material element of the offense charged, and it must not only be alleged, but, like all other statutory elements defining the crime, it must be proved by competent evidence to the satisfaction of the jury beyond a reasonable doubt. In cases of this sort, the jury should be instructed to find definitely the value of the property alleged to have been embezzled, or, at least, that it had a value of over $35. In the present case, the court, by the above instruction, withdrew from the consideration of the jury the issue of the actual or market value of the stock. We must assume that the jury followed the instruction of the court. A verdict was rendered, finding defendant guilty as charged in the indictment, which verdict, on its face, purports to be a finding of the value of the stock at the amount named in the indictment. This finding not only is not supported by the evidence, but it is contrary to the instructions of the court and the whole theory upon which the case was tried and submitted to the jury. In other words, the verdict fails to respond to the case submitted to the jury and the case considered by it.

[4] But it is urged by counsel for the government that proof of value should not be limited to market value; since there were no transactions on the exchanges at the time of the conversion here charged, or between July, 1914, and January, 1915, due to the opening of the great war in Europe. It is not necessary to limit the proof to the market value of the stock at a given date, if conditions forbid its establishment by competent proof. Actual value of the stock may be proved by the testimony of persons familiar with the affairs of the company, its assets, and the dividend-earning capacity of the stock, and by individual sales of stock at or near the date when the conversion occurred. Actual value, thus established, furnishes a proper basis upon which the jury may make a finding. The rule in such cases is well stated in Brinkerhoff-Farris Co. v. Home Lumber Co., 118 Mo. 447, 461, 24 S. W. 129, 133, as follows:

"Generally, the measure of damages for the conversion of stocks is their market value at the time of conversion; but when, as in the case at bar, no market value can be established by the prices current, it seems to us per-

fectly competent to resort to other modes of proof to establish its actual value, and this may very properly be done by proof of its dividend earning capacity; the value of the assets of the corporation and by individual sales of stock not under compulsion."

While this rule was announced in a civil action for damages, we perceive no reason for the application of a different rule in criminal cases.

[5] But it is said that it was the duty of the defendant, through his counsel, to submit for allowance a proper instruction on the question of value. Counsel for defendant requested the court to give the following instruction:

"In case you find a verdict of guilty under the first count, then you must determine the value of the certificates described in the first count, and must determine their value from the evidence alone; and before you can reach any figure of value, you must find that the evidence has proven that particular value beyond any and all reasonable doubt; if the evidence fails to prove any certain figure of value beyond a reasonable doubt, then it is your duty to fix the value at a nominal sum, that is to say, one cent."

The request for this instruction was also made as to the third count of the indictment. It is unnecessary to consider whether or not the court properly refused this instruction on the ground that it may have been improperly worded or misleading; since it was sufficient to call the attention of the court to the point involved, and therefore imposed upon the court the duty of properly instructing on the issue of value. This obligation the court sought to discharge by giving the instruction here complained of, and to the giving of which defendant duly excepted. No duty devolved upon the defendant to go further in his efforts to prevent the court from stepping into the error of overlooking the statute fixing the degrees of the crime charged. The court and counsel for the government are presumed to know the law, and the duty is not imposed upon the defendant to make the government's case and to carefully steer the court clear of error to his certain conviction.

It was the duty of the government, if it had a case, to convict defendant; and defendant, both by the Constitution and the law, was relieved from lending aid to his own condemnation, even to the extent of keeping silent. No new or advanced thought has entered into our system of jurisprudence which justifies the court in departing from those long-established safeguards with which the law surrounds the citizen when faced by his accusers at the bar of justice. If the necessity exists for the relaxation of the strict rules of criminal practice, the remedy is with the legislative, and not the judicial, department of the government.

[6] Defendant is here charged with two offenses, based upon a single act of conversion. The theory of the prosecution is that, since part of the stock was owned by John Helmus and part by his mother, though converted by a single act, the ownership establishes two independent offenses. This is not the law of this jurisdiction. In Hoiles v. United States, 3 MacArthur, 370, 36 Am. Rep. 106, where a defendant had been convicted and sentenced for three separate lar-

cenies, because the goods stolen belonged to three different parties, but were stolen from the same room at the same time, the court said:

"All the judges who heard the argument are of opinion that where the larceny consists of a single act, and the stolen goods belong to different persons, it is unnecessary that there should be separate informations or indictments, and that in such case there can only be a single conviction and sentence."

The commission of a crime is an offense against the public, and is punished, not to protect the property rights of the injured individual, but rather as a vindication of the public law. The name of the owner appears in a proper indictment for the purpose of identifying the ownership of the property stolen or converted.

"The particular ownership of the property which is the subject of a larceny does not fall within the definition and is not of the essence of the crime. The gist of the offense consists in feloniously taking the property of another; and neither the legal nor the moral quality of the act is at all affected by the fact that the property stolen, instead of being owned by one, or by two or more jointly, is the several property of different persons. The particular ownership of the property is charged in the indictment, not to give character to the act of taking, but merely by way of description of the particular offense." State v. Hennessey, 23 Ohio St. 339, 13 Am. Rep. 253.

The principle is sustained by the overwhelming weight of authority that the stealing or conversion of property belonging to different persons at the same time and place constitutes but a single offense, and should be prosecuted as such. Dalton v. State, 91 Miss. 162, 44 South. 802, 124 Am. St. Rep. 637; State v. Warren, 77 Md. 121, 26 Atl. 500, 39 Am. St. Rep. 401; Clemm v. State, 154 Ala. 12, 45 South. 212, 129 Am. St. Rep. 17; State v. Clark, 46 Or. 140, 80 Pac. 101; People v. Johnson, 81 Mich. 573, 45 N. W. 1119; State v. Larson, 85 Iowa, 659, 52 N. W. 539; State v. Congrove, 109 Iowa, 66, 80 N. W. 227; State v. Mickel, 23 Utah, 507, 65 Pac. 484; State v. Emery, 68 Vt. 109, 34 Atl. 432, 54 Am. St. Rep. 878; State v. Mjelde, 29 Mont. 490, 75 Pac. 87; Furnace v. State, 153 Ind. 93, 54 N. E. 441; Wilson v. State, 45 Tex. 76, 23 Am. Rep. 602; Ackerman v. State, 7 Wyo. 504, 54 Pac. 228; State v. Morphin, 37 Mo. 373.

It is unnecessary to consider whether this defect could be corrected by merely remanding the case for resentence, since the judgment for other errors must be reversed.

The judgment is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

SMYTH, Chief Justice (dissenting). The court told the jury that the statute under which the indictment was found is satisfied if the property "had any value at the time it was hypothecated." To this no exception was taken. The defendant acquiesced in it as a correct statement of the law. True, he assumed that the court had charged "that it is unnecessary to prove market value, or any value," and saved an exception to the alleged charge; but the court had not

so charged, and it said so at the time in the presence of the jury. This is its language: .

"I made no such statement as that. I said that the market value need not be proven, but the value must be proven."

It is said by my Associates that—

"The duty is not imposed upon the defendant to * * * carefully steer the court clear of error to his certain conviction."

No; but the law imposes on him the duty of clearly stating his exception to every action of the court upon which he expects to predicate error in the court of review—or at least the Supreme Court of the United States has definitely said so. In Allis v. United States, 155 U. S. 117, 122, 15 Sup. Ct. 36, 38 (39 L. Ed. 91), a criminal case in which the defendant had been sentenced to five years in the penitentiary, the court declared that—

"A party must make every reasonable effort to secure from the trial court correct rulings, or such at least as are satisfactory to him, before he will be permitted to ask any review by the appellate tribunal; and to that end he must be *distinct* and *specific* in his objections and exceptions." (Italics mine.).

In deciding this the court did not seem to think that it was putting forward "new or advanced thought." It was announcing a well-settled principle of procedure. See, also, Queenan v. Oklahoma, 190 U. S. 548, 23 Sup. Ct. 762, 47 L. Ed. 1175; Budd v. United States, 48 App. D. C. 332, 334, and cases there cited.

But even if an exception had been reserved to the instruction it would have made no difference, because the instruction did not prejudice the defendant. By it the court told the jury, as we have just seen, that the statute was satisfied if the property "had any value at the time it was hypothecated." How did that injure defendant? Plainly, it was necessary under the statute for the jury to find that the stock had value. But the argument seems to be that defendant was entitled to have the jury told that they must find whether or not the stock was worth more than $35. Supposing they had been; is it within the range of possibilities that they would have found that it was not worth more, in view of their verdict that it was worth the amount charged in the indictment, namely, $4,000? I think not. If such an instruction had been given, the verdict would have been just the same. Why should it have been otherwise? Therefore appellant was not prejudiced.

But was there any evidence that the property was worth more than $35? The defendant was charged with embezzling 20 shares of stock, of the value of $4,000, and the jury found him guilty as charged. My Associates say that there was no evidence of the market or actual value of the stock; in other words, that there was no evidence that the stock had any value.

The stock belonged to one Helmus and his mother. He delivered it to Henry to be sold for the owner's benefit. At the time of the delivery he said to Henry that he wanted a quick sale at $210 a share, but was willing to take $208 if necessary. Henry "said he

thought he could make it." Helmus further said that he had been securing dividends on the stock "about four times a year." Wolfe, cashier of the bank which made the loan of $4,000 to Henry at the time he is charged with embezzling the stock, said that Henry asked "the bank for a loan of $4,000 on 20 shares of Mergenthaler stock, and I approved the loan." Is not this evidence that the stock was worth more than $35?

But that is not all. Henry's bank was financially embarrassed at the time, and Wolfe knew it. He testified that he called on Henry at his place of business and talked over with him "the condition of Lewis Johnson & Co., as to the amount due our bank." The fact that he thought it necessary to go to Henry's office to talk over the condition of the account suggests that he regarded the necessity for settlement as urgent. He further said, at "that time the aggregate loans of Lewis Johnson & Co. with us were $75,000, or probably more"; that his bank carried an overdraft of theirs in the sum of $5,000 for "about a month and a half"; that he had talked "to Mr. Henry several times" about taking it up. At the time the $4,000 loan was made on the stock, Henry told the witness that "he was going to give a check to the Riggs National Bank for $4,000, and I [Wolfe] told the Riggs National Bank that if such a check was drawn on us it would be paid." This discloses that the Riggs Bank lacked confidence in the financial stability of Henry's institution, and that Wolfe knew it. Yet he loaned Henry, who was already indebted to his bank for over $75,000, and had there an overdraft for $5,000 for more than a month and a half, $4,000. Can it be reasonably said, in the face of this testimony, that the loan was not made on the stock, but on the financial worth of Henry? Wolfe himself says that Henry asked for the loan *on the stock*.

Here, then, we have the positive testimony of the lender that the loan was made on the stock, and, since it was, is not that evidence that he regarded the stock as worth more than $35? He was competent to testify touching its value. If he had said that it was worth more, no one, I assume, would urge that there was no evidence of value; but his conduct in making the loan indicated as clearly as his words could have done that in his opinion the stock was worth more than that. There is, then, abundant evidence to sustain the verdict of the jury on the question of value.

The majority say that whether or not the request for the instruction set out in their opinion was correct, it was sufficient to call the court's attention to the subject, and thereupon it became the court's duty to frame and give a proper instruction. We have said at least twice within the last two years that—

"To predicate error on the refusal of the court to grant a requested instruction, the request must be correct in point of law and applicable to the facts of the case."

See Jackson v. United States, 48 App. D. C. 272, 275, and decisions referred to there.

We have also ruled in the same case, where the defendant was sentenced to 25 years in the penitentiary, that "it was no part of the court's duty to recast" an erroneous request for an instruction, and cited Catts v. Phalen, 2 How. 376, 11 L. Ed. 306, Haffin v. Mason, 15 Wall. 674, 21 L. Ed. 196, Rosenbaum v. Weeden, 18 Grat. (Va.) 785, 799, 98 Am. Dec. 737, Robinson v. Parker, 11 App. D. C. 132, and Capital Traction Co. v. Copland, 47 App. D. C. 152, 161.

Furthermore, there was no contention by the defendant in the court below that the jury should find whether or not the stock was worth more than $35. He sought no instruction to that effect. His nearest approach to it was in the request set out by the majority, but that required the jury "to determine the value of the certificates"; that is, whether they were worth $33, $100, $4,000, or some other specific sum. But the statute did not require that. It was not necessary for the jury to go farther than to find whether or not the stock was worth more than $35. If worth more, the punishment would be one thing; if not worth more, it would be another. In no proper way did defendant bring section 851a to the attention of the lower court. In fact, it was suggested at the bar by his counsel that the court entirely overlooked the existence of the section. None the less, he is permitted by the majority to predicate error upon the assumption that the court failed to charge the jury with respect to it. This is a novel departure in appellate practice, and is utterly out of harmony with the holding of the Supreme Court of the United States on the subject. Allis v. United States; Queenan v. Oklahoma, supra.

I concede that the court is presumed to know the law, but what has that to do with the rule that he who desires to preserve the rulings of the court for review must bring sharply to the attention of the trial judge each point on which he relies, else he will not, save in the most exceptional circumstances, be entitled to have the rulings considered by the supervising tribunal? In the recent case of Guerini Stone Company v. Carlin Construction Company, 248 U. S. 334, 348, 39 Sup. Ct. 102, 107 (63 L. Ed. 275), the Supreme Court of the United States said:

"That an exception must be specific need not be emphasized," citing McDermott v. Severe, 202 U. S. 600, 610, 26 Sup. Ct. 709, 50 L. Ed. 1162; United States v. United States Fidelity Co., 236 U. S. 512, 529, 35 Sup. Ct. 298, 59 L. Ed. 696.

And in a still more recent case, Donatto Fillippon v. Albion Vein Slate Company, 250 U. S. 76, 39 Sup. Ct. 435, 63 L. Ed. 853, decided May 19, 1919, it observed, with regard to a contention made by one of the parties, that to yield to it—

"would be to overlook the primary and essential function of an exception, which is to direct the mind of the trial judge to the point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling, if convinced of error, and that injustice and mistrials due to inadvertent errors may thus be obviated."

In addition to the reason assigned by the Supreme Court in the case just cited, there is another: The trial justice is a busy person during the progress of a trial. He has little time for reflection, and

practically none for research. With contentious lawyers challenging nearly every step he takes, and harrowing him at every angle, it is a tribute to his learning that he commits so few mistakes. It is settled law, as disclosed by the decisions just referred to, that he is entitled to fair treatment at the hands of counsel, and this can be accorded only by clearly stating each point upon which counsel relies, and then invoking the court's judgment upon it. A trial should be an open battle, where each contestant exposes to the court below all the arrows which he intends to use. He should not be allowed to reserve some of them in his quiver until he appears in the court of review. If this is not the practice in our District, it is high time that it should become so. It would save many new trials, and greatly contribute to the speedy administration of justice and the prompt punishment of the guilty.

Another matter worthy of comment: There are 117 assignments of error in this case. "This practice of unlimited assignments is a perversion of the rule, defeating all its purposes, bewildering the counsel of the other side, and leaving the court to gather from a brief, often as prolix as the assignments of error, which of the latter are really relied on." Thus spoke the Supreme Court of the United States in Chesapeake & Delaware Canal Company v. United States, 250 U. S. 123, 39 Sup. Ct. 407, 63 L. Ed. 889, decided May 19, 1919. The record in the lower court teems with objections, most of which have no merit. The district attorney is charged with misconduct, and even the court itself is assailed, all without the slightest basis in the record. Of course it is the right, and the duty, of counsel to jealously guard the interests of his client; but he should do so according to correct practice.

I concur in so much of the opinion of the majority as holds that the indictment charged but one offense; but this does not mean that there must be a new trial. The authorities are ample to the effect that in such a situation the court should send the case back for resentence upon the first count of the indictment. In re Cica, 18 N. M. 452, 137 Pac. 598, 51 L. R. A. (N. S.) 373, and note referring to many decisions; also, United States v. Pridgeon, 153 U. S. 48, 63, 14 Sup. Ct. 746, 38 L. Ed. 631.

For the reasons given, I dissent.