UNITED STATES of America
v.
Noel Bryant JAMES.
Cr. A. No. 15555.

United States District Court
W. D. Louisiana,
Monroe Division.

Sept. 30, 1960.

T. Fitzhugh Wilson, U. S. Atty. and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for the United States.

George M. Snellings, Jr., McHenry, Snellings, Breard & Sartor, Monroe, La., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

Attempted prosecution of this defendant almost has reached the point where it fairly could be called persecution, for this is the third indictment returned against him within a period of twelve months, all based upon 18 U.S.C. § 656 and involving substantially the same set of circumstances.

He first was indicted on May 14th, 1959, in Criminal Action No. 15,317. His counsel promptly moved to quash, filing an unanswerable brief in support. After some consideration of the motion and brief, and being convinced that the motion was good, the United States Attorney consented in writing that it be granted. Thus ended Chapter One.

Chapter Two began on February 19th, 1960, when the second indictment was returned, in Criminal Action No. 15,512. Because of its importance as to the issue now before the Court, we quote it in full:

"That on or about December 23, 1957, in the Monroe Division of the Western District of Louisiana, Noel Bryant James, then the President and an officer of the Farmerville Bank, Farmerville, Louisiana, an insured bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, did, with intent to injure and defraud the said Farmerville Bank, knowingly, unlawfully and fraudulently embezzle and convert to his own use,

benefit and advantage, a certain credit of the said Farmerville Bank, to-wit: a promissory note dated at West Monroe, Louisiana, December 16, 1957, executed and signed by Wayne R. Deacon and J. C. Lolly, as co-makers thereof, and payable to the order of N. B. James, the defendant, on or before December 1, 1962, in the sum of $5,000.00, by the following manner and means: that the said defendant, by virtue of his position as President of the said Farmerville Bank, did, on or about December 16, 1957, sell for and on behalf of the said Bank to Wayne R. Deacon and J. C. Lolly certain property, to-wit: furniture and fixtures owned by the said Bank and in payment for said property, the said defendant did receive the aforesaid promissory note which he, the said defendant, sold to the Farmerville Brokerage and Insurance Agency, Inc., the said defendant then knowing full well that the promissory note was the property of the said Bank and constituted a credit thereof. (18 U.S.C. [§] 656)"

Defendant's counsel again promptly moved to quash, on the ground that 18 U.S.C. § 656 [1] classifies as a felony an embezzlement of "moneys, funds or credits" of a value in excess of $100 but also provides, in substance, that if the value does not exceed $100 the offense shall be a misdemeanor; and that inasmuch as the indictment did not allege the *value* of the note, it was fatally defective because of the impossibility of ascertaining from it whether defendant was charged with a felony or a misdemeanor. Another brief was filed citing authorities [2] which clearly demon-

---

1. "§ 656. *Theft, embezzlement, or misapplication by bank officer or employee*

"Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"As used in this section, the term 'national bank' is synonymous with 'national banking association'; 'member bank' means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and 'insured bank' includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation. June 25, 1948, c. 645, 62 Stat. 729."

2. Cartwright v. United States, 5 Cir., 146 F.2d 133, 135:

"Congress by statute passed in 1909, Sec. 541, 18 U.S.C.A., declared: 'All offenses which may be punished by death or imprisonment for a term exceeding one year shall be deemed felonies. All other offenses shall be deemed misdemeanors', and it has been uniformly held that it is not the actual punishment imposed but that which the statute authorizes which determines whether a crime is a felony or a misdemeanor. It is, therefore, well settled that where the grade of larceny, and consequently the punishment, depend on the value of the property, it is essential that the value of the property defendant is charged with having taken be alleged and proved, 32 Am.Jur., Sec. 112, p. 1023."

American Jurisprudence, Vol. 32, "Larceny", Sec. 112, p. 1023:

"It is a well-settled rule of the common law that an indictment for larceny must allege the value of the article alleged to have been stolen. This rule had its origin in the practice of distinguishing between grand and petit larceny with reference to the extent of the punishment, that being dependent in some measure upon the value of the article stolen.

strated that this motion, too, was good, and ought to be sustained.

Upon request of Government counsel, they were granted thirty days from March 31, 1960, within which to file a reply brief. Instead of doing so, however, they took another tack, on April 21, 1960, by moving for the voluntary dismissal of the second indictment immediately after they had caused the Grand Jury to return a new, and so-called "superseding," indictment, in Criminal Action No. 15,555, now before us. Thus ended Chapter Two and Chapter Three began.

This indictment is virtually identical in language to the second one, except that it adds allegations to the effect that the note was " * * * of a value in excess of $100 * * *" and that it was sold by defendant " * * * for a sum in excess of $100 * * *". It was returned by the same Grand Jury which returned the second one but—and this is the rub—there was *no* evidence whatever presented before the Grand Jury when it returned the present, third, indictment, some sixty days later. This the Government concedes.

Defendant now has moved to quash this indictment on the ground that it is violative of his rights under the Fifth Amendment [3] in that there was *no* evidence presented before the Grand Jury (which previously had returned the second bill alleging no value as to the note) to justify its allegations now that the note was of a value in excess of $100 and that it was sold by defendant for more than $100.

In support of his position, and in the absence of any Federal decisions squarely

in point, defendant relies heavily, and we believe soundly, upon State v. Ivey, 100 N.C. 539, 5 S.E. 407, 408, decided by the Supreme Court of North Carolina in 1888. In quashing a new indictment, the Court said:

"If, as in this case, the indictment be found to be defective, a fresh bill may be sent at the same term before the same grand jury that found the insufficient indictment, and they may act upon it. State v. Harris, 91 N.C. 656. But they cannot do so basing their action entirely upon what witnesses testified to when they had the first bill under consideration, without a re-examination of the witnesses, or the examination of other witnesses, or hearing other proper evidence before them. This is so because the fresh or second bill is as to them a new and independent one, different in some of its features from the first indictment; it charges the offense in a different way to a greater or less extent; it may charge a different offense altogether. The witnesses might testify differently from what they at first did, in view of the new bill; they might modify what they at first said; they might testify as to additional facts; they may have testified falsely at first; they might testify truly upon re-examination. As to the second bill, there was no evidence before the grand jury at all in contemplation of law. They must act upon evidence taken in respect to the bill of indictment before them. This is essential in the intelligent and fair discharge of their important duty,

And at the present time the rule is that where the grade of larceny, and consequently the punishment, depends on the value of the property, it is essential that the value be alleged."

See also: 52 C.J.S. Larceny § 78, pp. 879, 881; State v. Wilson, 1922, 150 La. 873, 91 So. 249, accord, State v. Pace, 1932, 174 La. 295, 140 So. 482; Henry v. United States, 49 App.D.C. 207, 263 F. 459; People v. Meyers, 397 Ill. 286, 73

N.E.2d 288; Wright v. Commonwealth, 196 Va. 132, 82 S.E.2d 603; State v. Baker, 100 Vt. 380, 138 A. 736; Price v. State, 165 Tex.Cr.R. 326, 308 S.W. 2d 47; Steel v. State, Tex.Cr.App., 217 S.W.2d 857; and Wilson v. State, Ala., 1 Port. 118.

3. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, * * *."

to give the evidence just application, point, and force, and to identify the witnesses with and render them responsible for what they testify to in the course of the prosecution. They, in this case, did not testify as to the new bill."

Defendant also relies upon Brady v. United States, 8 Cir., 24 F.2d 405, 407, which stated:

"It is the settled law of this circuit, we think, that an indictment will be quashed, where there was either no evidence whatever, or no competent evidence of the offense charged, presented to the grand jury * * * We think the same rule should be applied where a grand jury returns an indictment without any evidence whatever before it of a separate, distinct, and essential element of the offense, such as the use of the mails under section 215, and the overt act or acts under section 37. * * *

" ' * * * The doctrine that a grand jury may indict without evidence, if tolerated, would establish a precedent subversive of the liberty of the citizen, and his safety and security, and the good name and fame of any innocent person might at any time be blasted.' "

He also cites as persuasive United States v. Farrington, 2 Cir., 5 F. 343, 345, where the Court ruled:

"It is the duty of the court, in the control of its proceedings, to see to it that no person shall be subjected to the expense, vexation, and contumely of a trial for a criminal offence unless the charge has been investigated and a reasonable foundation shown for an indictment or information.

\* \* \* \* \* \*

"It is not the province of the court to sit in review of the investigations of a grand jury as upon the review of a trial when error is alleged; but in extreme cases, when the court can see that the finding of

a grand jury is based upon such utterly insufficient evidence, or such palpably incompetent evidence, as to indicate that the indictment resulted from prejudice, or was found in wilful disregard of the rights of the accused, the court should interfere and quash the indictment."

And he also would have us follow the language of Chief Judge Learned Hand, in United States v. Costello, 2 Cir., 221 F.2d 668, 677, reading:

"We should be the first to agree that, if it appeared that no evidence had been offered that rationally established the facts, the indictment ought to be quashed; because then the grand jury would have in substance abdicated."

For its part, the Government contends that this is merely a "superseding" indictment based upon evidence which was produced before the Grand Jury prior to its returning the indictment of February 19th, 1960. To quote exactly from its brief:

" * * * The Government frankly admits and concedes that not a single witness was called before the Grand Jury when the third, or superseding, Indictment was returned, the position of the Government in that particular regard simply being that inasmuch as the Grand Jury had heard the Government's evidence when the second Indictment was returned on February 19, 1960, recalling the same witnesses for the giving of repetitious testimony on April 21, 1960, the date on which the superseding Indictment was returned, would have been a vain and useless thing."

The Government further argues that defendant's position would be valid if the second and third indictments had been returned by different Grand Juries, but that this is not so when they were returned by the same Grand Jury. It also urges that it is inconceivable that the witnesses who appeared before the inquisitorial body prior to the second in-

dictment did not testify as to the value of the note; and that, since it was in the sum of $5,000 it is bound to have a value of more than $100.

In support of its position, the Government relies upon State v. Richard, La. Sup.Ct.1898, 50 La.Ann. 210, 23 So. 331, 332, where the Court said:

"＊ ＊ ＊ If, as we may infer from the facts in the record, the grand jury had previously heard testimony, and, after hearing it, had returned an indictment into court which was quashed, there was not the least necessity of re-examining the witness and reconsidering the testimony to return another indictment into court. The formality of re-examination of witnesses, or of reconsidering the knowledge upon which the grand jury had previously acted, would have been vain and tedious ＊ ＊ ＊."

It also depends upon Ex parte Harlan, 5 Cir., 180 F. 119, which it says is to the same effect; and for the general proposition that indictments are presumed to be founded upon competent evidence, it cites United States v. Sugarman, D.C., 139 F.Supp. 878; United States v. Quinn, D.C., 116 F.Supp. 802; United States v. Weber, 2 Cir., 197 F.2d 237; United States v. Texeira, 2 Cir., 162 F.2d 169; United States v. Fujimoto, 9 Cir., 102 F.Supp. 890; Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397; United States v. Brumfield, 5 Cir., 85 F.Supp. 696.

Thus the Government contends that defendant's motion has no merit and should be denied.

Analyzing first the authorities relied on by the Government, we consider Costello, supra. There the defendant was indicted and convicted for willfully attempting to evade payment of income taxes. Voluminous evidence was presented at the trial, including the testimony of three Government agents, who summarized the evidence and introduced computations showing, if believed by the jury, that Costello and his wife received far more income than they reported. Prior to the trial, Costello moved for inspection of the Grand Jury minutes and to dismiss the indictment, these motions being denied. At the trial, it developed from the evidence that the three Government agents were the only witnesses who appeared before the Grand Jury. After conviction, Costello appealed, contending that the indictment was based solely on hearsay evidence. Both the Court of Appeals and the Supreme Court refused to dismiss the indictment, the latter ruling:

"In Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 4, 54 L.Ed. 1021, this Court had to decide whether an indictment should be quashed because supported in part by incompetent evidence. Aside from the incompetent evidence 'there was very little evidence against the accused.' The Court refused to hold that such an indictment should be quashed, pointing out that 'The abuses of criminal practice would be enhanced if indictments could be upset on such a ground.' 218 U.S. at page 248, 31 S.Ct. at page 4. The same thing is true where as here all the evidence before the grand jury was in the nature of 'hearsay.' If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." [350 U.S. 359, 76 S.Ct. 408]

In a concurring opinion, Mr. Justice Burton noted his views:

"I agree with the denial of the motion to quash the indictment. In my view, however, this case does not justify the breadth of the declarations made by the Court. I assume that this Court would not preclude an examination of grand-jury action to ascertain the existence of bias or prejudice in an indictment. Likewise, it seems to me that if it is shown that the grand jury had before it no substantial or rationally persuasive evidence upon which to base its indictment, that indictment should be quashed. To hold a person to answer to such an empty indictment for a capital or otherwise infamous federal crime robs the Fifth Amendment of much of its protective value to the private citizen."

It is to be observed that in Costello there was *some* evidence before the Grand Jury when it indicted. Here there was *none*.

In Ex parte Harlan, supra, the defendants were convicted of conspiracy to violate the peonage laws. On an application for *habeas corpus* after conviction, they contended that the Grand Jury had indicted them without hearing any evidence. The record showed that the Grand Jury found two indictments against them, but that the United States Attorney believed them to be defective. Therefore, he presented to the Grand Jurors a third indictment and retired from the room. The Foreman then read the indictment aloud and asked if anyone had any objection to it. Upon hearing none, he signed it. The Court held the indictment valid, saying:

"* * * This indictment was evidently founded upon the testimony of witnesses on two previous days touching the offense upon which the grand jury at that session had already found two other indictments; and was preferred, to cure supposed defects in the earlier

indictments touching the same matter. Under such circumstances, it was not necessary, or at all essential to the validity of the last indictment, that the witnesses be recalled before the grand jury and go over their former testimony. * * *" [180 F. 129]

As shown by the quotation, all three indictments were returned by the same Grand Jury obviously within a matter of a few days of each other. The evidence the jurors had heard was still very fresh. Here more than sixty days had elapsed between the second and third indictments. On appeal in Harlan, the Supreme Court, at 218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101, in affirming the lower Court, pretermitted the question of the alleged lack of "legal evidence" before the Grand Jury, and ruled that, if such an objection were available, it could not be raised for the first time in a *habeas corpus* proceeding after conviction.

In Richard, it is not shown what period of time elapsed between the two indictments or whether the defect upon which the earlier indictment was quashed was merely one of form or of substance. In the present case the second indictment was defective in its substance, in failing to allege either a felony or a misdemeanor. Obviously, there was no evidence before this Grand Jury as to the value of the note when it returned the second indictment. Otherwise, it would have been alleged. Likewise, there must have been no evidence then as to defendant's having sold the note for more than $100, or that, too, would have been alleged. In the present indictment, both the alleged *value* of the note and the *price* for which it was sold are set forth— substantive allegations which were not made in the second indictment—and yet it is admitted that *no* evidence whatever was submitted to the Grand Jury before it returned the present indictment.

This is not, as the Government calls it, merely a "superseding" indictment, or an amendment to the second indictment. It is a *new* indictment with specific allegations of value and amount so as to

charge a felony—a crucial difference in substance.

We can no more assume, in keeping with the Government's argument, that, merely because the note was in the face amount of $5,000 it was bound to be worth more than $100 than we can assume, in the absence of specific allegations, that there was evidence before the Grand Jury prior to the second indictment as to the value of the note or the amount for which it was sold. The note could have been worth its full face value or it could have been completely worthless. Only evidence could establish the true facts, and admittedly the Grand Jury had no evidence before it when it returned the present indictment.

As noted in Ivey, supra, in the more than sixty days that elapsed between the return of the second and third indictments, the witnesses—if they had been called, and under basic concepts of due process defendant was entitled to have them called—might have testified differently from what they at first did, in view of the new bill; they might have modified what they at first said; they might have testified as to additional facts; and they might have testified falsely at first and truly upon re-examination. Moreover, in the light of such re-examination, the Grand Jury might not have indicted at all.

In the final analysis, therefore, what the Government is seeking to have us do is to blindly follow the usual presumption as to the validity of an indictment, when the record fairly cries out against that conclusion here. This we cannot do.

On the authority, therefore, of Ivey, Brady, and Farrington, and finding nothing in the cases cited by the Government to the contrary, we must follow those decisions because of their sound reasoning and because, as applied to this case, they conform to our convictions as to the true meaning of due process of law under the Constitution.

Thus ends the Third Chapter. Without measuring the merits of this case, which have not been heard, we cannot help but observe that three times now

defendant has been stigmatized by invalid indictments. It remains to be seen whether there will be a Fourth Chapter, or more, to pass before us.

For the reasons given, we are bound in justice to conclude that the indictment must be quashed. It is so ordered.