Howard D. WITTENBERG, Appellant,

v.

UNITED STATES, Appellee.

No. 9816.

District of Columbia Court of Appeals.

Argued June 8, 1976.

Decided Nov. 9, 1976.

Walter T. Charlton, Washington, D. C., appointed by this court, for appellant.

Daniel A. DeRose, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Richard H. Saltsman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, NEBEKER and HAR-RIS, Associate Judges.

KERN, Associate Judge:

Appellant was charged in an information with and convicted by the court sitting without a jury of embezzlement in violation of D.C.Code 1973, § 22–1202. He was sentenced to one hundred eighty days' imprisonment and a fine of $150, but the execution of the sentence of imprisonment was suspended and appellant was placed on probation for two years.

Appellant presents three reasons for reversal of his conviction—the insufficiency of the government's evidence, the trial court's refusal to grant a new trial upon the basis of evidence newly discovered by the defense, and the failure by the government to proceed against him by way of indictment rather than information.

Appellant was formerly employed as a "counter man" in the Washington store of G. W. Imirie, Inc., a corporation retailing automotive parts and equipment. Having had some prior experience in auto racing, appellant was apparently assigned to specialize at that store in high speed and performance automotive parts. On or about June 11, 1972, a regular customer, one Batch, was in the store to purchase a certain high performance camshaft manufactured by the Crane Company. Appellant informed Batch that he himself had such a camshaft in his possession and offered to sell it to Batch at a discount. The following day appellant brought the camshaft to Batch's garage and sold it to him in the original packaging for $115. (The cost to the retailer was $113.50, retail list price was $227, and the discounted price to an Imirie employee was about $150.) Appellant did not indicate to Batch how he had obtained the camshaft.

At some point in July 1972, George Imirie, the vice-president and treasurer of the company, became aware that a Crane camshaft was missing from the store. He personally searched the store inventory, and then ordered a search of all sales slips from the time the camshaft was received (about three weeks before appellant sold a camshaft to Batch) to the time it was discovered missing. Neither the camshaft nor any inventory record (which appellant himself was supposed to maintain) nor any indication that the camshaft had been sold in the normal commerce of the store was found. At some unspecified date after appellant was discharged from the company in August 1972 for reasons apparently unrelated to this case, Batch returned to the store and explained to Imirie how appellant had sold him the camshaft. Appellant was then arrested on Imirie's complaint and ultimately brought to trial.

■ Appellant's first contention is that the evidence adduced at trial was legally insufficient to establish that a camshaft was embezzled from Imirie, or, alternatively, that appellant was the one who embezzled it. It is well-settled that we must consider the evidence below in a light most favorable to the government and affirm if that evidence reasonably permits a finding of guilt. *Wooten v. United States,* D.C. App., 343 A.2d 281 (1975). There is adequate evidence in the record before us to support a finding that a Crane camshaft was embezzled. In addition to the facts summarized above, an invoice from Imirie's distributor was introduced into evidence showing that a Crane camshaft of the identical specifications as that sold by appellant to Batch had been shipped to Imirie's Washington store prior to the transaction between Batch and appellant; there were initials "H.W." on that invoice indicating that someone at the Imirie store received all goods listed on the invoice (although there was no expert testimony that appellant himself put those initials there); and, Imirie did not normally stock Crane camshafts.

There is also evidence to support a finding that appellant embezzled the camshaft. Testimony was adduced at trial that the Crane camshaft of the specification appellant admittedly sold to Batch was a "rare" and "exotic" part manufactured in small

numbers for a national market and suited only to a particular type of auto engine; and, a specification sheet in the package and a cost of shipping statement on the package received by Batch showed that appellant sold Batch the identical model of camshaft which had been shipped to Imirie.

■ In considering appellant's second argument that the trial judge abused his discretion in denying the motion for a new trial based upon newly discovered evidence, we must recognize that a court has broad discretion in granting or denying such a motion. *Williams v. United States,* D.C. App., 295 A.2d 503, 505 (1972); *Thompson v. United States,* 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951). The prerequisites for granting a new trial because of newly discovered evidence are set out in *Heard v. United States,* D.C.App., 245 A. 2d 125, 126 (1968) [1] and appellant did not meet them; hence, we find no abuse of discretion in denying appellant's motion in this case.

Specifically, his alleged new evidence would show that as of the date of the sale by appellant to Batch, the Crane Company had manufactured 187 of that particular model of camshaft, thus apparently contradicting testimony at trial by Imirie that he had been told only two such models had been produced. Assuming *arguendo* this evidence could be properly characterized as "newly discovered," it seems to us that rather than rebutting the inference that this particular model was a "rare" and "exotic" part, evidence of such a small number in a national market confirms the inference of the relative uniqueness of the particular part. In addition, the evidence alleged by appellant to be new would have also demonstrated, to appellant's prejudice, that the very camshaft appellant sold to Batch had been shipped by the Crane Company to the New Jersey address of Imirie's distributor in March of 1972, two months before the distributor's Maryland office shipped to Imirie the same specification camshaft later discovered missing. In short, we fail to see how this "new" evidence would "probably lead to an acquittal."

■ Appellant's third contention, raised for the first time on appeal, is that he was charged with a crime for which the statute provides a so-called infamous punishment, and therefore he was entitled to be accused by the Grand Jury's indictment rather than by information. Preliminarily, we note that since the right to be tried upon an indictment for an infamous offense is jurisdictional, it may be raised for the first time on appeal. *See Smith v. United States,* D.C.App., 304 A.2d 28, 31 (1973).[2]

■ The command of the Fifth Amendment is that an accused subject to an infamous punishment has the constitutional right to insist that he shall be tried upon the accusation of a Grand Jury. *Ex Parte Wilson,* 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89 (1885). This command is binding upon the District of Columbia. *United States v. Moreland,* 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700 (1922). Whether a punishment is infamous turns on the nature and quality of the sentence the court is au-

---

1. Those prerequisites are:
   (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal. [*Heard v. United States, supra* at 126 (footnote omitted).]

2. Super.Ct.Cr.R. 12(b)(2) provides in part that "[l]ack of jurisdiction . . . shall be noticed by the court at any time during the pendency of the proceeding," and "pendency" includes the appeal. *United States v. Thomas,* 144 U.S.App.D.C. 44, 444 F.2d 919 (1971) (construing identical language in Fed.R.Crim.P. 12(b)(2)); *Williams v. District of Columbia,* 136 U.S.App.D.C. 56, 419 F.2d 638 (1969) (en banc) (construing identical language in Gen.Sess.Crim.R. 10 (b)).

thorized to impose; the actual sentence received is immaterial. *Ex Parte Wilson, supra.*

■ The information charging appellant in this case is a standard printed form used to charge a variety of offenses by the United States Attorney for the District of Columbia. It contains a number of boxes, each accompanied by a recitation of the name of the crime and its elements, with blank spaces to be completed with facts pertinent to the particular offense charged. In this case, the box marked "Embezzlement" is checked, and the text reads as follows: [3]

> EMBEZZLEMENT—in that he wrongfully converted to his own use and fraudulently took and secreted, with intent to convert to his own use one crane camshaft and kit of value, the property of G. W. Imrie [*sic*], Inc. which had come into the possession and under the care of the said Howard David Wittenberg by virtue of his employment as agent, clerk,

and servant of G. W. Imrie [*sic*], Inc., in violation of Section 22–1202, District of Columbia Code.

D.C.Code 1973, § 22–1202 reads in pertinent part:

> If any . . . servant . . . of any . . . incorporated company, shall wrongfully convert to his own use, . . . anything of value which shall come into his possession or under his care by virtue of his employment or office . . . he shall be deemed guilty of embezzlement, and shall be punished by a fine not exceeding one thousand dollars, *or by imprisonment for not more than ten years, or both.* [Emphasis added.]

It may be seen that the information closely follows the language of the statute, including its use of the words "of value." Upon a reading of the information and the applicable statute cited therein, it would appear that appellant in this case did face an infamous, or felonious punishment.[4]

---

3. A secondary point raised on this appeal relates to the fact that appellant was originally charged with petit larceny in violation of D.C.Code 1973, § 22–2202, not an infamous offense. Before the trial began, the embezzlement information was filed with the court and the petit larceny information apparently dismissed. Appellant urges that in permitting this "amendment" the trial court acted contrary to Super.Ct.Cr.R. 7(e):

> AMENDMENT OF INFORMATION: The court may permit an information to be amended at any time before verdict or finding *if no* additional or *different offense is charged and if substantial rights of the defendant are not prejudiced.* [Emphasis added.]

The government responds that it was "substituting" an entirely new action and therefore its action was not subject to the Rule. Super.Ct.Cr.R. 12(b)(2) provides that any defects in the initiation of prosecution other than those which deprive the court of jurisdiction must be raised by motion before trial to avoid waiver. *See Bush v. United States,* D.C.App., 215 A.2d 853 (1966). The record discloses that appellant made no such motion or other challenge. We add that no sub-

stantial rights of the appellant were prejudiced by the government's action; the only material difference we discern between the two misdemeanor offenses is that element of how the accused came into possession of the property. Petit larceny presumes a trespass; while embezzlement presumes betrayal of a position of trust. As appellant was an employee of the rightful owner (Imirie testified that the company had paid the invoice for the camshaft shipped to his store) and "had possession as an ordinary salesman with authority to pass the title on receiving payment or part payment . . . and then appropriated the articles to his own use, the act would be embezzlement, and not larceny," *Talbert v. United States,* 42 App.D.C. 1, 14–15 (1914); thus, we see no merit to the argument that the crime was larceny.

4. As noted, the sentence *ultimately* imposed does not determine whether or not an offense is to be prosecuted by information or indictment. *Ex Parte Wilson, supra.* We do consider appellant's sentence only for purposes of establishing whether or not he was tried in fact for a felony offense; however, given the trial judge's discretion in sentencing

The non-infamous, or misdemeanor, grade of penalty for embezzlement is set out in D.C.Code 1973, § 22–1207:

> Whoever shall be guilty of any offense defined in sections 22–1202 to 22–1206, shall, *where the* thing, evidence of debt, *property*, proceeds, or profits *be of the value of less than $100*, be punished by imprisonment for not more than one year or a fine of not more than $200 or both. [Emphasis added.]

And nowhere in the information or at trial is this cited. Moreover, the evidence presented was that the value of the camshaft exceeded $100.

On the other hand, three factors contained in the record suggest that this was a misdemeanor trial: the use of an information rather than an indictment; the actual sentence imposed; and, the form and text of the information. However, use of an information to initiate prosecution does not of itself control the issue of whether a misdemeanor or felony is involved here, since, for example, one may knowingly waive one's right to an indictment. Super. Ct.Cr.R. 7(b); *Smith v. United States, supra; accord, Smith v. United States*, 360 U.S. 1, 8, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959). Similarly, the sentence which the court imposed upon appellant was lawful for either a felony or a misdemeanor violation of the statute.

■ We are persuaded upon a close examination of the language of the information that appellant was *not* charged with the felony offense in this case. The purpose of an indictment or information is of

course to apprise the accused of the precise charge against him, including all elements of the offense, so that he may understand that charge and how he must prepare to meet it at trial *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Owens*, D.C.App., 332 A.2d 752 (1975); *Bush v. United States*, D.C.App., 215 A.2d 853 (1966). *See also*, Super.Ct.Cr.R. 7(c). As we read §§ 22–1202, –1207, a *material* element of the crime of *felony* embezzlement is that the wrongfully taken or converted property be of a value exceeding $100. This is the only element that differentiates between the two grades of the offense of embezzlement. Since this critical element is missing from the information before us, the information is clearly insufficient to charge the offense of *felony* embezzlement. In short, where the grade of the offense, and consequently the punishment, depend on the value of the property, it is essential that the value of the property *be alleged as well as proven* in order to support the felony conviction. *Robinson v. United States*, 333 F.2d 323, 326 (8th Cir. 1964).[5]

*Henry v. United States*, 49 App.D.C. 207, 263 F. 459 (1919), is in agreement with the view we take in this case. There, the court construed the same statutes before us (then codified differently), and reversed a *felony* conviction, stating "[t]*he value of the property converted* is a material element of the offense charged, and *it must not only be alleged,* but like all other statutory elements defining the crime, it must be proved . . .." *Id.* at 209, 263 F. at 461 (emphasis added). It may be seen that the

---

we are unwilling to view the sentence imposed as unreasonable for *either* grade of the offense in relation to the facts of this case. Therefore, sentence imposed does not aid us in disposing of the issue presented.

5. *Robinson* construes the federal embezzlement statute, 18 U.S.C. § 659 (1970); that statute first sets out the elements of several offenses, and then states in pertinent part:

[S]hall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both; but if the amount or value of such money, baggage, goods or chattels does not exceed $100, he shall be fined not more than than $1,000 or imprisoned not more than one year, or both.

court's reading of §§ 22–1202 and 1207 is entirely consistent with our reading of those statutes in the instant case so that to be a felony the charge must *allege* the essential element that the value of the property embezzled is in excess of $100.[6]

We therefore hold that appellant was charged with a misdemeanor, not an infamous offense, and hence was not denied his constitutional right to indictment. Accordingly, the judgment of the trial court is in all respects

Affirmed.

---

6. If we were to accept appellant's interpretation of the particular information that initiated his prosecution, we would in effect be approving the use of that very same text language for a felony indictment, but an indictment must contain *every* material element of the offense charged. *See e. g., United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *Kinoy v. District of Columbia*, 130 U.S.App.D.C. 290, 400 F.2d 761 (1968). *See also* 8 J. Moore's Federal Practice ¶ 7.04 (1975) and authorities cited therein.

There can be no question that a crucial element of felony embezzlement is that the goods embezzled be of a value exceeding $100. An indictment without this element in some form intelligible to the accused does not inform the accused that he must prepare for trial on a felony charge. Indeed, such an indictment will not sustain a felony conviction on appeal even if not challenged in the trial stages, as it is "totally lacking in the statement of [the] offense." *Bush v. United States, supra*, 215 A.2d at 855. *See also Nichols v. United States*, D.C.App., 343 A.2d 336 (1975) (holding an indictment sufficient for a felony conviction under D.C. Code 1973, § 22–403, which contains a similar "value" distinction between the felony and misdemeanor grades).