**UNITED STATES of America, Appellant,**

v.

**Gloria RODRIGUEZ, a/k/a "Carmen Santiago", Defendant-Appellee.**

Nos. 530, 531, Dockets 85–1323, 85–1324.

United States Court of Appeals, Second Circuit.

Argued Nov. 26, 1985.
Decided June 19, 1986.

Henry Pitman, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., for S.D.N.Y., Warren Neil Eggleston, Asst. U.S. Atty., New York City, of counsel), for appellant.

Joel B. Rudin, New York City, for defendant-appellee.

Before TIMBERS, PIERCE and MINER, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York, Morris E. Lasker, *Judge*, under which defendants were sentenced, *inter alia*, to two years probation under 18 U.S.C. § 3147. The government's appeal challenges this sentence contending that under § 3147 a two-year minimum term of imprisonment was mandated and that the district court erred in imposing a term of probation.

The Comprehensive Crime Control Act of 1984 provides the context for interpreting the Congressional intent embodied in the Bail Reform Act, generally, and in § 3147 specifically. Based upon this contextual foundation, we conclude that, by enacting § 3147, Congress intended to redefine the sentencing judge's authority and to limit the judge's exercise of discretion. We conclude that imprisonment was mandated and, consequently, we vacate the judgment and commitment order and remand to the district court for resentencing.

## BACKGROUND

The facts herein are not in dispute. On April 3, 1985, Gloria Rodriguez, the appellee, was arrested in New York City for selling cocaine to an undercover police officer. She was arraigned before a federal magistrate and then released on a personal recognizance bond.

Two weeks later, Rodriguez was arrested again in New York City, this time for selling heroin to an undercover police officer.

In each instance, she was charged with making the sale within 1000 feet of a public school.

A three count indictment was filed based on the first arrest; a two count information was filed based on the second arrest. The two cases were assigned to Judge Lasker who accepted pleas from Rodriguez as fol-

lows: plea of guilty to Count One of the indictment which charged distribution of cocaine near a public school, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B), 845a, and 18 U.S.C. § 2; plea of guilty to Count Two of the information which charged possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B)—each is a federal felony.

On July 9, 1985, Rodriguez was sentenced on each of these two charges. Rodriguez was sentenced on Count One of the indictment to a term of four months' imprisonment and six years' special parole; and on Count Two of the information imposition of sentence was suspended and she was placed on probation for two years to follow release from custody. Then, acknowledging that he found the issue "far from clear" and citing the rule of lenity, Judge Lasker concluded that the court had the power to suspend the two year minimum term of imprisonment required by Section 3147[1] and to impose a term of probation. He then proceeded under § 3147 to suspend imposition of sentence and to place Rodriguez on probation for a further period of two years.

## DISCUSSION

Chapter I of the Comprehensive Crime Control Act of 1984 is entitled the Bail Reform Act of 1984 ("the Bail Act") and includes 18 U.S.C. § 3147. Generally, the Bail Act addresses the process by which defendants are released or detained pending trial, sentencing, or appeal. It also provides for additional penalties for failure to appear, for violation of a release condition, and, under § 3147, for committing an offense while on release.

The government contends that the district court had no power to suspend the mandatory two year minimum term of im-

---

1. Section 3147 provides:

A person convicted of an offense committed while released pursuant to this chapter shall be sentenced, in addition to the sentence prescribed for the offense to—

(1) a term of imprisonment of not less than two years and not more than ten years if the offense is a felony....

A term of imprisonment imposed pursuant to this section shall be consecutive to any other sentence of imprisonment.

prisonment required under 18 U.S.C. § 3147; that the language of the statute is clear and the legislative history is unambiguous and, hence, the rule of lenity does not apply; and that § 3147 supersedes the Probation Act, 18 U.S.C. § 3651.

Appellee's primary contention is that § 3147 requires a mandatory minimum *sentence,* not *imprisonment,* and probation may be granted pursuant to 18 U.S.C. § 3651, since no explicit reference to the Probation Act was made by Congress in § 3147 and, further, that this omission suggests that Congress had no intention of superseding the provisions of the Probation Act. Appellee also argues that the rule of lenity applies, thus seeking to invoke the maxim of statutory construction which provides that any ambiguity concerning the reach of a penal statute must be resolved in a defendant's favor.

As for the plain language of § 3147, appellee's claim is that the language of the statute does not go far enough, that certain restrictive language must be included in a federal criminal sentencing statute in order to override the provisions of the Probation Act. However, the critical issue here is not merely the presence or absence of certain words, but whether Congress evinced an intention to supersede the Probation Act. The objective of statutory interpretation is to interpret the idea that Congress intended to convey by a statute, not merely to interpret the words of a statute.

In determining the Congressional intent embodied in § 3147, it is important to consider the Comprehensive Crime Control Act of 1984 as a whole. The fact of passage of such far-reaching legislation strongly suggests that there was an intent to overhaul and supersede many aspects of the federal criminal justice system. It is also apparent that Congress intended to address two specific matters: criminal activity during the pre-trial release period and the unrestricted discretion of sentencing judges.

The legislative history reflects a clear Congressional intent to address the problem of the escalating number of crimes perpetrated during the pre-trial release period. Senator Strom Thurmond in introducing S. 1554, 97th Cong., 1st Sess. (1981), a predecessor to the 1984 Bail Reform Act, stated:

> Behind the economy, fear of crime is becoming the No. 1 social issue. One reason, in my opinion, for the continuing growth of crime in America is the practice of releasing arrested defendants back into the community prior to trial.... *Too often, those individuals are simply rearrested or found to have committed additional crimes before going to trial on the initial charge.... This legislation is intended to address this serious problem in our present criminal justice system.*

127 Cong.Rec. S. 19015 (daily ed. July 31, 1981) (remarks of Sen. Thurmond) (emphasis added). Similarly, in discussing S. 1554, Senator Kennedy expressed a strong concern over the rate at which *defendants in pending cases were being rearrested* and "charged with serious felonies—especially burglary, robbery, larceny, and drug offenses". *Id.* at 19020 (remarks of Sen. Kennedy).

In addition, both the Senate and House committees on the judiciary took note of the significant rearrest rate of charged defendants. In 1983, the Senate Committee on the Judiciary expressed such concerns in considering amendments to the Bail Reform Act of 1966:

> ... the 1966 Act drew criticism particularly in the District of Columbia where all crimes formerly fell under the regulation of Federal bail law. In a considerable number of instances, persons accused of violent crimes committed additional crimes while released on their own personal recognizance. Furthermore, these individuals were often released again on nominal bail.

S.Rep. No. 147 at 8; *see also* H.Rep. No. 1121, 98th Cong., 2d Sess., 33, 35 (1984). The conclusion that the rearrest rate had become a serious problem was supported by a report submitted to the Senate Committee by the Department of Justice during

the debate on the Bail Reform Act of 1984. The report stated that:

> In a recent study conducted by the Lazar Institute, one out of six defendants were [sic] rearrested during the pretrial period. Nearly one-third of these persons were rearrested more than once, and some as many as four times.... Among defendants released on surety bond, the form of conditional release reserved for those who are the greater bail risks, the incidence of rearrest reached the alarming rate of twenty-five percent.

Hearing on S. 829 Before the Subcomm. on Criminal Law of the Committee on the Judiciary, 98th Cong., 1st Sess. 119–20 (1983) (Formal Statement of the Department of Justice).

Clearly, Congress intended to address this problem by the enactment of the Bail Reform Act of 1984 and the adoption of provisions, including § 3147, specifically directed toward the deterrence of this type of conduct: section 3142(b), (e), and (g) permit the district judge to consider danger to the community in determining whether release pending trial would be appropriate; section 3148(b)(1)(A) provides for revocation of a release order upon a finding of probable cause that the defendant has committed a crime; and section 3142(h)(2)(A) requires the judicial officer who issues the release order to inform the defendant of "the penalties for violating a condition of release, including the penalties for committing an offense while on pretrial release." Indeed, Magistrate Bernikow informed the defendant in this case of the mandatory penalties for both bail-jumping and committing a crime while released on bail.

In introducing S. 1554, 97th Cong., 1st Sess. (1981), the predecessor of the bill later enacted as the Bail Reform Act of 1984, Senator Thurmond stated that such a penalty enhancement provision was intended to deter criminal conduct by released individuals by providing for mandatory prison terms:

> Section [3147] is a new provision that provides mandatory prison terms to run consecutive to any other sentence of im-

prisonment for the commission of a Federal, State or local offense while released pursuant to this chapter.

127 Cong.Rec. S. 19017 (daily ed. July 31, 1981) (remarks of Sen. Thurmond).

In addition, the reports of the Senate and the House committees on the judiciary stressed that Section 3147 was intended to serve as a deterrent by imposing a mandatory minimum "term of imprisonment" on individuals who commit additional crimes while on pre-trial release:

> Section 3147 is designed to deter those who would pose a risk to community safety by committing another offense when released under the provisions of this title and to punish those who indeed are convicted of another offense. This section enforces the self-evident requirement that any release ordered by the courts include a condition that the defendant not commit another crime while on release. Given the problem of crime committed by those on pretrial release this requirement needs enforcement. Accordingly, this section prescribes a penalty in addition to any sentence ordered for the offense for which the defendant was on release. This additional penalty is a term of imprisonment of at least two years and not more than ten if the offense committed while on release is a felony. If the offense committed while on release is a misdemeanor, this additional penalty is at least 90 days and not more than one year.

S.Rep. No. 147, at 61. *Accord* H.Rep. No. 1121, 98th Cong., 2d Sess. 30–31 (1984); S.Rep. No. 225, 98th Cong., 1st Sess. 34 (1983), *reprinted in* 4 U.S.Code Cong. & Ad.News 3182, 3217 (1984); S.Rep. No. 317, 97th Cong., 2d Sess. 64 (1982).

Finally, in assessing the budgetary impact of the enactment of the Bail Reform Act, both the Senate and the House noted that:

> If an individual is convicted of committing an offense while on release, the bill requires that the individual be imprisoned for an additional period of time, the

length of which varies with the seriousness of the offense.

\* \* \* \* \* \*

The mandatory additional sentence for those individuals convicted of an offense while on release is expected to result in increased federal costs....

S.Rep. No. 147 at 65, 66–67. *See also* H.Rep. No. 1121, 98th Cong., 2d Sess., 33, 35 (1984); S.Rep. No. 225, 98th Cong., 1st Sess. 417 (1983), *reprinted in* 4 U.S.Code Cong. & Ad.News 3182 (1984); S.Rep. No. 317, 97th Cong., 2d Sess. 68, 70 (1982).

It thus appears that, in these instances, Congress intended to limit the discretion of sentencing judges by passage of the Comprehensive Crime Control Act of 1984. Evidence of such intent is embodied in the Sentencing Reform Act of 1984, which is to become effective on November 1, 1987, and which will modify the federal sentencing system by establishing parameters within which district judges are to impose sentences in accordance with published guidelines, which are being drafted by a sentencing commission. *See* Section 217, Pub.L. No. 98–473, Tit. II, Ch. II, § 217, 98 Stat. 2017 (October 12, 1984). Once the guidelines have been adopted, any deviation from what is prescribed therein would permit either the government or the defendant to appeal from a sentence. Also, once these guidelines become effective the mandatory sentence established under § 3147 will automatically be repealed and replaced by the commission's guidelines. *See* Section 235(a), Pub.L. No. 98–473, Tit. II, Ch. II, § 235(a), 98 Stat. 2028 (October 12, 1984). This legislatively designed scheme suggests linkage between the penalties established for crimes committed while released on bail and the Sentencing Reform Act. While the Probation Act has yet to be repealed by the new statute, it is clear to us from the full context of the Comprehensive Crime Control Act of 1984 and the history of its unenacted antecedents that the term of imprisonment referred to in § 3147 was intended to be mandatory.

Further, Rodriguez' contention that Congress did not intend to provide for a two-year mandatory minimum prison sentence is at odds with the plain language of § 3147 as well as its legislative history. The plain language requires that a person who commits an offense while on pretrial release "shall be sentenced ... to ... a term of not less than two years." The Supreme Court instructed years ago that [Courts]

are not at liberty to construe any statute so as to deny effect to any part of its language. It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word....

*Market Co. v. Hoffman*, 101 U.S. (11 Otto) 112, 115–16, 25 L.Ed. 782 (1879).

To us, this means that the express terms of § 3147 should be construed according to their plain meaning and, thus, that this statute requires the imposition of a mandatory minimum term of imprisonment.

We conclude that § 3147 is a punishment-enhancement statute, enacted for the purpose of deterring individuals who were not otherwise being effectively deterred. To hold that § 3147's imprisonment sanction can be suspended would render the statute devoid of the meaning intended by Congress.

The appellee's arguments which suggest that the proper interpretation of § 3147 should be based upon precedents in which a different interpretation was given to statutory penalties passed prior to enactment of the Probation Act or given to statutory penalties passed as parts of statutes designed to penalize certain specific conduct are not really helpful in our interpretation of the statute before this court. *See, e.g., United States v. Becker*, 536 F.2d 471 (1st Cir.1976) (probation available for violators despite statute requiring sentence of "not less than 2 or more than 10 years" for marijuana violation); *United States v. Ortiz*, 488 F.2d 175, 179 (9th Cir.1973) (probation available under the aircraft piracy statute, 49 U.S.C. § 1472(i), despite the statutory requirement that violators "shall be

punished ... by imprisonment for not less than 20 years"); *United States v. Donovan*, 242 F.2d 61 (2d Cir.1957) (finding the 25-year minimum sentence for armed robbery of a post office contained in 18 U.S.C. § 2114 subject to the provisions of the subsequently enacted probation act). Appellee has suggested no case which involved such a comprehensive legislative scheme, designed specifically to address perceived systemic deficiencies in the area of federal criminal justice, as exists here. In our view, the mandatory language of § 3147, considering these specific purposes and the broad context in which it was enacted, represents a Congressional mandate and must be given a literal interpretation.

Appellee argues that the rule of lenity should be applied herein. The district judge also relied upon this rule in reaching his decision. The rule of lenity, which is a maxim of statutory construction, calls for the resolution of ambiguous penal statutes in favor of the defendant. *See, e.g., Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). However, it is inapplicable where both the statute and the legislative history are clear and unambiguous. This case does not present ambiguous legislation, although it does raise questions regarding the precedential impact of cases which interpreted penal statutes and the Probation Act as providing a discretionary option by a sentencing judge despite specific penal legislation, *see supra.* We have considered these cases and nevertheless conclude that the legislative intent of § 3147 is clear, especially given the broad context of the Comprehensive Crime Control Act of 1984. Therefore, we find the rule of lenity to be inapplicable herein. *United States v. Culbert*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116–17, 55 L.Ed.2d 349 (1978) (the rule is not to be used " 'in complete disregard of the purpose of the legislature' ") (quoting *Scarborough v. United States*, 431 U.S. 563, 577, 97 S.Ct. 1963, 1970, 52 L.Ed.2d 582 (1977)).

Vacated and remanded for resentencing.