**Freeman SPEIGHT, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 85–385.**

District of Columbia Court of Appeals.

Argued En Banc Oct. 7, 1988.
Decided Nov. 28, 1989.

Robert L. Liebross, appointed by this court, for appellant.

Elizabeth Trosman, Asst. U.S. Atty. with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, were on the brief, for appellee.

Before ROGERS, Chief Judge,* and NEWMAN, FERREN, BELSON, TERRY, STEADMAN and SCHWELB, Associate Judges, and PRYOR,**

15. I agree with the majority that Mrs. Kimes' other claims of error are unpersuasive.

\* Judge Rogers was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on November 1, 1988.

\*\* Judge Pryor was Chief Judge of this court at the time of argument. He was commissioned as a Senior Judge on November 2, 1988.

Senior Judge, and MACK,*** Associate Judge, Retired.

STEADMAN, Associate Judge:

Under District of Columbia law dealing with pretrial release and detention, a person convicted of committing a crime while on pretrial release is subject to an enhanced sentence. D.C.Code § 23–1328 (1989 Repl.). The issue before this *en banc* court is whether the due process clause forbids applying this provision in a case where the government shows simply the fact of the defendant's pretrial release status. We hold that the due process clause requires no more.

### I.

Appellant Freeman Speight, Jr., was arrested on January 16, 1984, for the felony offense of carrying a dangerous weapon (the "first" offense). He was presented on that charge and granted pretrial release by the court on January 17, 1984.[1] On October 18, 1984, a grand jury dismissed the government's allegations and Speight has not been subsequently indicted on that charge.

In the meantime, however, on July 19, 1984, Speight, who was then still on pretrial release in the dangerous weapon case, was arrested on a "second" offense, for distributing cocaine on that day. He was convicted of the cocaine distribution charge on January 23, 1985, and the sentencing hearing was held on March 12, 1985.

The government filed "release papers" alleging that Speight had sold the cocaine while on pretrial release for the felony offense of carrying a dangerous weapon, and that he was therefore subject, pursuant to D.C.Code § 23–1328 (1989 Repl.), to an additional term of imprisonment of from one to five years.[2] At the time of sentencing, Speight admitted that he had been on pretrial release for the dangerous weapon charge at the time the cocaine offense allegedly occurred, but also stated that the dangerous weapon charge had later been dismissed by a grand jury. The trial court made no inquiry regarding this allegation, and subsequently sentenced Speight to three to fifteen years in prison, a term we shall assume to be allowable only by virtue of applying the enhancement provision of section 23–1328.[3]

In his appeal to a panel of this court, Speight presented three arguments. Two of them, that the release offender statute by its terms requires an indictment on the original charge by a grand jury, and that the fifth amendment grand jury clause also requires an indictment, were rejected outright by the panel.[4] In his third argument, Speight contended that the due process clause prohibits additional punishment in a case such as his, where only an arrest took place. The panel found this argument to be persuasive, reasoning that Speight had received a lengthened prison sentence, in excess of the maximum penalty for the offense of which he has been convicted, for a status that the government had not shown to be related to culpable conduct. However, deeming itself bound by prior holdings of this court to the contrary, *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971), it affirmed. *Speight v. United States*, No. 85–385 (December 9, 1987). The en banc court vacated the panel decision, and heard argument on the due process issue. We affirm.

---

*** Judge Mack was an Associate Judge of this court at the time of argument. Her status changed to Associate Judge, Retired, on October 1, 1989.

1. A preliminary hearing was held on January 25, 1984. Speight alleges that the dangerous weapon charge was the product of an illegal search and seizure, an argument we note but of course do not assess.

2. Since Speight had previously been convicted of a drug offense, he was subject as a repeat offender to a maximum sentence of up to ten years, quite apart from his release status. D.C. Code §§ 33–541(a)(2)(B), –548(a) (1988 Repl.).

3. There is no claim of harmless error on the ground that the sentence could have been imposed without reliance on the release offender provisions.

4. We agree with and adopt both the reasoning and the holding of the panel in rejecting these two arguments, as set forth in Parts II and III of the panel opinion attached as an Appendix.

## II.

The Code section before us, D.C.Code § 23–1328, is straightforward in its terms. In pertinent part, it provides:

(a) Any person convicted of an offense committed while [on pretrial release] shall be subject to the following penalties in addition to any other applicable penalties:

(1) A term of imprisonment of not less than one year and not more than five years if convicted of committing a felony while so released; and

(2) A term of imprisonment of not less than ninety days and not more than one year if convicted of committing a misdemeanor while so released.

No qualification is imposed that the person be guilty of the first offense or that the procedures leading to the pretrial release be free of constitutional imperfection. It is the fact of pretrial release that triggers the enhancement provision. On the other hand, the provision imposes no sanction until and unless it is proven beyond a reasonable doubt that the person committed the second offense while on pretrial release. Thus, the enhanced penalty is imposed not for the release status as such, but rather for committing the second offense while on release. It is the commission of the second crime that is being punished.

■ The issue before us is whether Congress can enact a statute operating in such a manner consistent with the due process clause of the Constitution.[5] Historically courts have examined sentencing statutes under a rational basis test, although sentencing by definition impinges on the liberty interest. *See Marshall v. United States,* 414 U.S. 417, 422, 94 S.Ct. 700, 702, 38 L.Ed.2d 618 (1974) (statutory distinctions made in sentencing schemes will be upheld if they have "some relevance to the purpose for which the classification is made") (citations omitted); *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35

L.Ed.2d 282 (1973); *Daniel v. United States,* 408 A.2d 1231 (D.C.1979) (per curiam). A statute will withstand constitutional attack under rational basis analysis if there is "any state of facts either known or which could reasonably be assumed [that] affords support for it." *Backman v. United States,* 516 A.2d 923, 927 (D.C. 1986) (quoting *United States v. Carolene Products Co.,* 304 U.S. 144, 153–54, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938)). We undertake that examination.

### A.

Section 1328 was enacted as part of the District of Columbia Court Reform and Criminal Procedure Act[6] which not only reorganized the District's courts, but also contained provisions reforming the criminal sections of the D.C.Code, including the law regarding pretrial release and detention. In enacting the 1970 Act's pretrial release provisions, Congress made clear that it was responding to the "very sharp upturn" in serious crime which followed enactment of the Bail Reform Act of 1966, Pub.L. 89–465, 80 Stat. 214, and the local implementing Act, the District of Columbia Bail Agency Act, Pub.L. 89–519, 80 Stat. 327 (1966). *See* H.R.Rep. No. 907, 91st Cong., 2d Sess. 80 (1970); *see also id.* at 87 (provisions to "reform ... local bail procedures after ... devastating experience under the Bail Reform Act"); *id.* ("rise of [street] crime in the District since enactment of the Bail Reform Act ... appalling"); *id.* at 89 (citing statistics showing "significant effect" of pretrial release on crime rates).

The infirmity perceived in the Bail Reform Act was that, in changing the historic money bail system, it made likelihood of flight the sole criterion in release determinations. In response, the 1970 Act's provisions on pretrial release and detention, as part of a comprehensive scheme "to help deter crime committed while on release pending trial or appeal," *id.* at 93, authorized courts to consider "danger to the community" in deciding whether to grant

---

**5.** The fact that Congress is not imposing punishment for commission of the first offense makes *in*apposite appellant's bill of attainder and eighth amendment arguments.

**6.** Pub.L. No. 91–358, 84 Stat. 473 (1970).

release. *Id.* at 87. Section 1328, providing increased penalties for offenses committed while on release, was thus intended as but one provision in a comprehensive legislative scheme designed to deter crime perpetrated by individuals on release.[7] The legislative history is explicit on this point:

> Your committee has also taken certain long overdue steps to help deter crime committed while on release pending trial or appeal. These include modifying existing proof problems in bail jumping prosecutions, providing for adequate sanctions for violation of release conditions including revocation of release where appropriate, and stiff added penalties for crimes committed while released. To heighten the deterrent effect we have proposed that the added penalties and the bail jumping punishments should be mandatory minimum prison sentences imposed consecutively to any other sentences.
>
> It is extremely important to remember when considering these provisions related to pretrial detention that they should not be considered in isolation, but rather as one of the many facets of this bill that seeks to provide some relief to the crime problems besetting the District of Columbia. While we provide more judges and reorganize the courts to expedite trials, we fully realize that the problem of the criminal defendant currently being released under the Bail Reform Act of 1966 poses a threat to the safety of persons and the community that should and must be met.

H.R. REP. No. 907, 91st Cong., 2d Sess. 93 (1970).

In discussing possible factors giving rise to the "indisputable fact that many defendants are committing ... crimes during the period of ... pretrial release," Congress noted the "last fling" phenomenon, explaining that "many [released] defendants can be expected to accelerate their misconduct, becoming more reckless and more dangerous because their time for planning action has been reduced." H.R. REP. No. 907, 91st Cong., 2d Sess. 83 (1970).[8] Increased penalties for crimes committed on release would provide deterrence to those who otherwise would not be "particularly motivated to obey the law during the period of pretrial release." *Id.*

Another reality to be considered is that in practice, "any release ordered by the courts include[s] a condition that the defendant not commit another crime while on release." *United States v. Rodriguez,* 794 F.2d 24, 27 (2d Cir.1986), *rev'd on other grounds,* 480 U.S. 522, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987). In the instant case, for instance, the release order specifically provided in bold print that the defendant "NOT COMMIT ANY CRIMINAL OFFENSE" and warned "if you are convicted of an offense committed while released, you shall be subject to ... penalties in addition to any other applicable penalties...." Thus, in enacting D.C.Code § 23–1329 (1989 Repl.), dealing with the revocation of release, the Congress specifically noted that "[b]ecause revocation is based on a betrayal of trust placed in the defendant by the court, there is no requirement that there be a showing of substantial probability that the defendant committed the offense for which he was originally released or that the offense must be a felony." 116 CONG. REC. 8210–11 (1970) (excerpt from Committee report's section-by-section analysis). Likewise, it

---

7. That the objective of section 1328 invokes a strong governmental interest is plain. "The government's interest in preventing crime by arrestees is both legitimate and compelling." *United States v. Salerno,* 481 U.S. 739, 749, 107 S.Ct. 2095, 2102, 95 L.Ed.2d 697 (1987).

8. This "last fling" phenomenon need not be viewed as confined to the truly guilty. Congress might reasonably have believed that numerous persons caught up in the criminal justice system might be sufficiently apprehensive, reasonably or not, about the potential of conviction on the original charge such that they would be more likely to engage in criminal conduct once released than they would be otherwise. In any event, the scheme set forth in the release offender statute is not rendered constitutionally infirm simply because it relies on generalized statistics to predict future criminal conduct. *See United States v. Salerno, supra,* 481 U.S. at 750, 107 S.Ct. at 2103 (Congress could reasonably single out individuals arrested for a specific category of offenses as being far more likely, on the whole, to commit dangerous acts after arrest).

may be viewed as a betrayal of trust to commit a crime while on release. "One demonstrates disdain for the law by committing an offense while on release pending trial of an earlier charge." *State v. Webb*, 309 N.C. 549, 555, 308 S.E.2d 252, 258 (1983). One with such an attitude could well be viewed as meriting a longer prison term. *See United States v. Grayson*, 438 U.S. 41, 50–51, 98 S.Ct. 2610, 2615–16, 57 L.Ed.2d 582 (1978) (noting with approval federal Courts of Appeals decisions holding that the attitude of a convicted defendant with respect to his willingness to flout the law [by committing perjury] is a proper matter for consideration by sentencing judge).

In sum, we cannot say that Congress' assessment of the District's crime situation and its chosen course of action to combat the problem by enhancing penalties for persons convicted of an offense while on release is unconstitutionally lacking in rationality.[9]

### B.

Even accepting the proposition that Congress may in general single out for enhanced punishment those who commit crimes while on pretrial release, appellant argues that the section as applied is unconstitutional. More specifically, he argues that he must be given an opportunity to show that the first offense involved in fact no culpable conduct by him, or that unconstitutional methods were used in procedures leading to his arrest for the first offense.

One fallacy in this approach is its apparent assumption that the enhanced sentence is imposed as a sanction for the first offense. The sanction is imposed for the commission of the second offense while on pretrial release. As already demonstrated, we think that Congress could rationally impose a greater penalty on such persons convicted for criminal offenses in such circumstances.

Furthermore, the argument appears to be based on a belief that to impose collateral consequences for an involvement with the criminal justice system short of conviction is an unconstitutional infringement on the presumption of innocence. This is not the case.

Courts construing the Federal Firearms Act,[10] which punishes indicted persons who receive or ship firearms in interstate commerce, have consistently rejected claims that the statutory classification is irrational on the ground that, in treating indicted persons differently, it "adversely affect[s] the presumption of innocence." *See, e.g., United States v. Craven*, 478 F.2d 1329, 1340 (6th Cir.), *cert. denied*, 414 U.S. 1086, 94 S.Ct. 606, 38 L.Ed.2d 491 (1973) (classification valid since Congress' conclusion that fact of felony indictment is "so often indicative of a propensity for violence" is "eminently reasonable"); *United States v. Brown*, 484 F.2d 418, 424 (5th Cir.1973), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974) (no merit to claim that statute violates presumption of innocence; whether underlying indictment later found invalid not significant since crime complete when firearm carried in interstate commerce by a person then under indictment); *United States v. Quiroz*, 449 F.2d 583, 585

9. The sentencing scheme is not infirm simply because Congress believed that all persons on release were in need of special deterrence, whereas in fact only some such persons actually posed a threat of recidivism. The line drawn by Congress need not be perfect, so long as it serves rational ends. *See, e.g., New York City Transit Authority v. Beazer*, 440 U.S. 568, 592–93, 99 S.Ct. 1355, 1369–70, 59 L.Ed.2d 587 (1979) (transit authority could constitutionally refuse to employ all users of methadone even though some of these persons would be fit employees; that total exclusion rule may be "broader than necessary" does not authorize judicial interference with that policy decision).

10. 18 U.S.C. § 922(n) (1988). The statute makes it unlawful for "any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The substance of this provision was previously codified at 18 U.S.C. §§ 922(g)(1) & (h)(1) (Supp. V 1965–1969) and, prior to that, at 15 U.S.C. §§ 902(e) & (f) (1964).

(9th Cir.1971) (noting that "Congress did not say that a conviction on the underlying indictment was an ingredient of the crime"); *cf. Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (Congress could rationally conclude that any unvacated felony conviction, even an allegedly invalid one, is a sufficient basis on which to prohibit possession of a firearm; limiting scope of statute to validly convicted felons would be at odds with statutory scheme as a whole).[11]

It is true that the Federal Firearms Act requires that an indictment have issued, while here the release status alone suffices to trigger the enhancement provision. However, prior arrests standing alone have been given effect in certain contexts. *See District of Columbia v. Hudson*, 404 A.2d 175, 178 (D.C.1979) (discussing uses of arrest records); *Villines v. United States*, 312 A.2d 304 (D.C.1973) (proper to consider prior arrests in deciding whether to grant pretrial release and release pending appeal); *Russell v. United States*, 131 U.S. App.D.C. 44, 45, 402 F.2d 185, 186 (1968) (same); 18 U.S.C. § 3577 (1982) (providing that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convict-ed of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate penalty").

Not one of the courts which has interpreted 18 U.S.C. § 3147 (Supp. III 1983), the federal analogue to the District's release offender statute,[12] even remotely suggested that the statute violates the presumption of innocence.[13] The Supreme Court, in discussing section 3147, noted that the statute "is no different from many other federal statutes requiring minimum sentences." [14] In holding that section 3147 does not create a separate offense, the Ninth Circuit stated that the statute "simply mandates an enhanced sentence for someone who commits an offense while released on bail. There is nothing exceptional about the statute, nor is it vague or ambiguous. The language is plain and the meaning is clear." *United States v. Patterson*, 820 F.2d 1524, 1526 (9th Cir.1987). *See also United States v. Mesa*, 641 F.Supp. 796, 798 (S.D.Fla.1986) (section 3147 "clearly grants to the courts the power to enhance the penalty for an offense committed while on release").

It is well-settled that sentencing judges are afforded broad discretion.[15] The Su-

---

**11.** We do not read *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), as pointing to a contrary conclusion to our holding here. That case dealt with the proper procedures required when the enhancement factor was possession of a firearm. Here *the enhancement factor is pretrial release status.* It is not challenged that the burden is on the government to prove that fact or that the court is the proper decider of that fact. *Tansimore v. United States*, 355 A.2d 799, 803–04 (D.C.1976).

**12.** Section 3147 was expressly modeled after the District's section 1328. *See United States v. Cooper*, 827 F.2d 991, 994 (4th Cir.1987) (section 3147 "based in large part on the ... District of Columbia Release and Detention Statute" (citing S.Rep. No. 225, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3188, 3190–91, 3195, 3200, 3203–04, 3209)). One difference between the federal and the District's legislative scheme, is that the District's statute includes a provision stating that: "The giving of a warning to the person when released of the penalties imposed by this section shall not be a prerequisite to the application of this section." D.C.Code § 23–1328(b) (1989 Repl.).

**13.** Indeed, in an opinion holding the federal sentencing guidelines unconstitutional because they impinged on the due process right to be considered as an individual during the sentencing process, section 3147 was cited as an example of what, on the other hand, is permissible. *United States v. Alafriz*, 690 F.Supp. 1303, 1310 (S.D.N.Y.1988).

**14.** *United States v. Rodriguez*, 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987) (per curiam). At issue in the case was whether section 3147 implicitly repealed the federal probation statute. The Court overruled the Second Circuit to hold that it did not.

**15.** *Williams v. New York*, 337 U.S. 241, 246–47, 69 S.Ct. 1079, 1082–83, 93 L.Ed. 1337 (1949); *Grant v. United States*, 509 A.2d 1147, 1155 (D.C.1986); *Johnson v. United States*, 508 A.2d 910, 911 (D.C.1985); *Williams v. United States*, 427 A.2d 901, 904 (D.C.1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981); *Butler v. United States*, 379 A.2d 948, 950 (D.C. 1977).

preme Court has held that it is a "fundamental sentencing principle" that judges may "conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).[16] In this context, it is difficult to perceive how Congress could be held to be constitutionally precluded from enacting section 1328. To repeat, the sole crime punished is the crime of committing an offense while on release. Under section 1328, penalties flow, not from the "mere fact of arrest," but from the affirmative act of engaging in an offense, resulting in conviction, during post-arrest release. We can find no unconstitutionality in this statutory scheme.

SCHWELB, Associate Judge, with whom Associate Judge FERREN joins, concurring:

A person who has been arrested but not convicted is presumptively innocent. To say that a defendant may be subjected to greater punishment merely because he has been arrested for a prior offense which he is presumed not to have committed, without at the same time requiring a showing of breach of faith with the court, raises due process problems which I, at least, find troubling. It appears to me arguably incompatible with basic principles of fairness, which the due process clause was designed to protect, to permit an individual who has been wrongfully arrested, handcuffed, and detained for some period of time for a crime which he did not commit to be subjected to enhanced punishment for a new offense solely on account of his prior arrest and release. The very wrong which was done to him in connection with the offense which he did not commit becomes a vehicle for imposing a harsher penalty for the only crime of which he stands convicted.

As Judge Steadman points out for the plurality, however, Speight was ordered, as a condition of release in the earlier case, not to commit a criminal offense. He disobeyed that order by distributing cocaine and, as Judge Steadman points out, he betrayed the court's trust. A defendant's culpability may reasonably be viewed as more serious when his offense was committed not only in violation of a substantive criminal statute but also in contravention of a court order. There is no doubt that the court acted within its jurisdiction when it set the conditions of Speight's release, and Speight was obliged to comply with the court's order regardless of whether he committed the underlying release offense. *See Bolden v. Bolden*, 376 A.2d 430, 432 (D.C.1977); *cf. United States v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Speight's enhanced penalty was therefore constitutional as applied to him. Defendants in this jurisdiction are routinely ordered to obey the law as a condition of pretrial release, and I find it unnecessary to reach the relatively rare situation in which one who commits a crime while on release status has not also flouted a court order, or broken a promise to the court,[1] or both.

---

**16.** *See also United States v. Bernard*, 757 F.2d 1439, 1444 (4th Cir.1985) (no due process problem where sentencing judge in exercising his discretion relied on evidence with respect to crimes of which defendant was acquitted); *United States v. Campbell*, 221 U.S.App.D.C. 367, 378 n. 19, 684 F.2d 141, 152 n. 19 (1982) (noting that "[t]he cases uniformly allow consideration of prior acquittals" by sentencing judge); *United States v. Bowdach*, 561 F.2d 1160, 1175 (5th Cir.1977) (sentencing judge may consider evidence of crimes for which a defendant has been indicted but not convicted); *United States v. Lee*, 540 F.2d 1205, 1210–11 (4th Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976) (sentencing judge may consider evidence obtained in violation of Fourth Amend-

ment); *United States v. Marines*, 535 F.2d 552, 554 (10th Cir.1976) (sentencing judge may consider evidence of courts in an indictment which had been dismissed pursuant to plea bargain); *United States v. Sweig*, 454 F.2d 181, 184 (2d Cir.1972) ("just as the sentencing judge may rely upon information as to crimes with which the defendant has been charged but not tried, [citation omitted], so here the judge could properly refer to the evidence introduced with respect to crimes of which defendant was acquitted.").

**1.** Some judges orally explain the conditions of release and require the defendant, before being released, to accept the conditions and to promise to obey them.

I agree with Chief Judge Rogers that "disdain for the law" is not a crime. That does not mean, however, that a breach of faith with the court is not a proper predicate for imposing more severe punishment. A sentencing judge has wide discretion in the types of evidence which he or she may use in determining a defendant's sentence. *See, e.g., United States v. Grayson,* 438 U.S. 41, 49–51, 98 S.Ct. 2610, 2615–16, 57 L.Ed.2d 582 (1978); *Williams v. New York,* 337 U.S. 241, 244–50, 69 S.Ct. 1079, 1081–85, 93 L.Ed. 1337 (1949). Specifically, the judge may consider criminal conduct of which the defendant has not been convicted, as well as his attitude towards society and prospects for rehabilitation. *Id.* Under the circumstances, Congress may, without transgressing constitutional proscriptions, provide for additional punishment in situations where a crime has been committed not only in violation of a criminal statute but also in contravention of a court order or a promise to the judge. To require one who has betrayed a judge's trust to pay a greater penalty does not deny him liberty without due process of law.

Accordingly, I concur in the judgment of the court, but on substantially narrower grounds.

ROGERS, Chief Judge, with whom Associate Judge NEWMAN and Associate Judge, Retired, MACK join, dissenting:

Congress can, of course, decide that a person who is rearrested after being released on pre-trial release should be subjected to additional punishment. Such behavior violates the trial court's explicit condition of pre-trial release that the defendant not commit another crime. This is the only rationale which withstands scrutiny when the first offense did not involve culpable conduct by the defendant or is otherwise non-punishable.[1] The issue in Speight's case, however, is whether the imposition of such punishment in excess of the maximum penalty authorized upon conviction of the second offense, as well as the penalty provided for violating a condition of release, violates due process in the absence of any finding of culpability relating to the first offense. The plurality can cite no case or other authority upholding the constitutionality of such additional punishment, and the concurring opinion suggests an analogy to criminal contempt without acknowledging the constraints on the use of such power. In short, for the first time, a court upholds against a due process challenge the imposition of additional punishment for up to five years imprisonment for the status of having been arrested without any judicial determination that the first offense involved culpable conduct by the defendant.

The central issue raised by this case is whether the constitution requires the government to prove an additional sentencing factor beyond those expressly incorporated in the release offender statute. Essentially, the argument is that when a defendant asserts his legal innocence of the first offense, the statute is unconstitutional because in order to preserve individual rights and to prevent the arbitrary punishment of innocent conduct, the government must show there is some basis for the first offense, and in order to check governmental abuse of power, it must also demonstrate that constitutional methods were used; that is, a defendant at some point must be afforded a procedural means for asserting the lack of culpable conduct regarding the first offense, even if pretrial status is assumed to be only a sentencing factor.

Speight has highlighted the potential infirmity in D.C.Code § 23–1328 (1981) by contending that his additional five-years imprisonment, exceeding that which could otherwise be imposed, constitutes an infamous crime, by citing the dangers of inadequate grand jury review, and by asserting that increasing punishment for a past arrest not followed by conviction violates the

---

1. For ease of reference, I use the terms "first offense" to refer to the offense for which a defendant is initially arrested and subsequently released under § 23–1328, and "second offense" to refer to the offense of which the defendant has been convicted after being arrested while on release under § 23–1328.

constitutional presumption of innocence under the due process clause.[2] On its face, as the plurality argues, the release offender statute, § 23–1328, does not punish the defendant solely for a prior arrest, which would deny due process, but instead punishes the defendant for committing the second offense while on pretrial release—an act to which the presumption of innocence still applies in full force. It does not follow, however, that a conviction for the second offense can foreclose a defendant from asserting his legal innocence of the first offense, or the illegality of his first offense, as a circumstance that would preclude imposition of the release offender statute's additional penalty.[3] Accordingly, I dissent.

## I.

Congress had reason to believe that persons on pretrial release commit a large number of crimes, and could legitimately anticipate that larger penalties would increase deterrence. Nonetheless, the release offender statute is potentially overbroad because it can be used to punish innocent conduct. In those circumstances it will violate due process. By its terms the statute could be used to increase sentences by as much as five years even when there is no reasonable basis for the original arrest or the defendant's fundamental constitutional rights have been violated. For example, under § 23–1328 it is conceivable that a completely innocent person on pretrial release for a crime he did not commit who is subsequently arrested would, because of his pretrial release status, be sub-

ject upon conviction of the second offense to an additional sentence of not less than one nor more than five years imprisonment when the second offense is a felony, and not less than ninety days nor more than one year imprisonment when the second offense is a misdemeanor. Under the statute such sentences must be imposed consecutive to any other sentence of imprisonment.

This characterization of an arrest and charge for the first offense as, under some circumstances, "innocent conduct" is based on more than a legal presumption.[4] In general, as with recidivist statutes, Congress may constitutionally single out a class, defined by past acts, and provide for potentially greater punishment for future crimes. In such instances, the legislature may use a prior conviction as propensity evidence primarily because of the procedural protections that obtain in the first instance. Here, Congress relied on general evidence of "recidivism" during pretrial release, on the suggestion that "lifelong incorrigibles" will not reform while awaiting trial, and on the observation that persons on bail would succumb to the temptations of a "last fling" in order to find a greater potential for the commission of future crimes. S.Rep. No. 405, 91st Cong., 1st Sess. 3 (1969); H.R.Rep. No. 907, 91st Cong., 2d Sess. 82 (1970); Managers on the Part of the Senate for S. 2601, 91st Cong., 2d Sess., Statement Regarding the Conference Action Upon E. 2601, (Comm. Print 1970).

General statistics concerning arrestees,[5] however, afford no legitimate basis, with-

---

**2.** Speight was sentenced to a total of 1 to 15 years imprisonment. The maximum penalty for cocaine distribution is 5 years. D.C.Code § 33–541(a)(2)(B) (1986 Supp.). Because he had prior convictions, his sentence was enhanced by another five years. Id. § 33–548(a). He does not challenge that the maximum sentence for his distribution conviction is ten years.

**3.** Speight's challenges to the first offense on the grounds that the charge was the result of an unconstitutional search and seizure and that the dangerous weapon charge was dismissed by the grand jury were not considered by the trial judge in imposing sentence.

**4.** This analysis is not inconsistent with the line of decisions holding that an illegal arrest without more cannot bar subsequent prosecution nor be a defense to a valid conviction. See United States v. Crews, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980), and cases cited therein.

**5.** See, e.g., Schware v. Board of Bar Examiners, 353 U.S. 232, 241, 77 S.Ct. 752, 757, 1 L.Ed.2d 796 (1957) ("When formal charges are not filed against the arrested person and he is released without trial, whatever probative force the arrest might have had is normally dissipated."); Scales v. United States, 367 U.S. 203, 224–25, 81 S.Ct. 1469, 1483–84, 6 L.Ed.2d 782 (1961) ("In

out more, for predicting and punishing the behavior of any given individual.[6] Statements on the propensities of "lifelong incorrigibles" cannot be applied to persons who are innocent of the charges. Any "last fling" phenomenon would be confined to those who have in fact committed criminal acts and who have a reasonable apprehension of being convicted of the second offense. Moreover, contrary to the plurality's suggestions at 127 n. 8, innocent persons with no propensity to commit crimes and persons who have no reason to fear conviction because of insufficient evidence or constitutionally impermissible governmental action do not necessarily have their motives altered for the worse by the fact of their recent arrest and current pretrial release status. The government can have no interest in punishing what amounts to innocent conduct, *see Mullaney, supra; In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25

L.Ed.2d 368 (1970),[7] nor legitimate interest in "upping the ante" on the basis of presumptively innocent triggering events; imposing a greater duty on "innocent" individuals is unjustifiable.[8]

The analogy to repeat offender statutes [9] is clearly faulty when a defendant alleges innocence of the first offense and has only been convicted of the second offense committed while on pretrial release. Under repeat offender statutes, there has been a prior conviction of a separately charged offense after the defendant has been afforded the due process protections required by *Winship, supra*, 397 U.S. 358, 90 S.Ct. 1068. In that circumstance, the conviction is a historical fact of public record; in the instant circumstance, the government can prove only the first arrest and the release as historical facts. In seeking an additional period of incarceration for a pretrial release offense, the government's burden,

our jurisprudence, guilt is personal...."). While the fact of a prior arrest may be included in a federal presentence report to chronicle the defendant's general history, "a record of arrests without prosecution or conviction must not be equated with evidence of prior wrongdoing." *United States v. Cesaitis*, 506 F.Supp. 518, 524 (E.D.Mich.1981) ("cannot be considered indicative of any criminal propensities"). Allowing the defendant to explain the circumstances of the arrest helps to avoid misuse of this conviction. *Id.* In the District of Columbia, the sentencing judge may consider reliable evidence of the "defendant's character and the circumstances surrounding the crime of which he has been convicted." *Johnson v. United States*, 508 A.2d 910, 911 (D.C.1985); *Williams v. United States*, 427 A.2d 901, 904 (D.C.1980), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981). This court has not addressed the question whether a sentencing judge may impose a harsher sentence solely because of a prior, unrelated arrest. *See District of Columbia v. Hudson*, 404 A.2d 175, 178 n. 4 (D.C.1979) (en banc). *Cf. Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241, 1244–45, 87 L.Ed. 1519 (1943) (requiring rational connections between fact proved and fact presumed).

**6.** That the legislature has the greater power to add five years to the underlying offense does not, the Supreme Court has repeatedly held, necessarily mean it also has a lesser power that would infringe upon fundamental constitutional rights. *See, e.g., Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Speiser v. Randall*, 357 U.S.

513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). The government must show that Congress' general fears are applicable in the individual case.

**7.** *Cf. Robinson v. California*, 370 U.S. 660, 667, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962) ("one day in prison would be cruel and unusual for the 'crime' of having a common cold"); *Ingraham v. Wright*, 430 U.S. 651, 660, 97 S.Ct. 1401, 1407, 51 L.Ed.2d 711 (1977) (eighth amendment "imposes substantive limits on what can be made criminal and punished as such"); *Stoutenburgh v. Frazier*, 16 App.D.C. 229, 236 (1900) ("[i]t would clearly be a cruel and unnatural punishment to impose fine and imprisonment upon a party, because he might happen to be regarded by some persons as a *suspicious person*, without anything more."). *Compare Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (upholding punishment for act of drunkenness in public although committed while in unresponsible state of intoxication; no additional punishment for the state itself).

**8.** For example, in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), the Court ruled that a state legislature could not punish vagrants out of fear of the future harm that they might cause. An arrest cannot, in general, be characterized as a violational act on the part of the defendant. *Parker v. United States*, 373 A.2d 906 (D.C.1977) (criminal contempt).

**9.** *See Daniel v. United States*, 408 A.2d 1231 (D.C.1979) (per curiam); *Tansimore v. United States*, 355 A.2d 799 (D.C.1976).

by logical analogy,[10] cannot be the same when the defendant asserts his innocence of the first offense. *See Patterson v. New York,* 432 U.S. 197, 207, 214–15, 97 S.Ct. 2319, 2325, 2329, 53 L.Ed.2d 281 (1977) (under New York statute, the government met its burden of proof beyond a reasonable doubt on all elements of the offense on which it was relying for a level of punishment before any burden to prove an affirmative defense was placed on the defendant). *But see United States v. Davis,* 715 F.Supp. 1473 (D.Calif.1989) (federal sentencing guidelines violative of due process because sentencing factors need not be proven beyond a reasonable doubt).

Nor can reliance on the trial court's contempt powers save § 23–1328 from constitutional infirmity. D.C.Code § 23–1329(c) (1981) provides that a sanction up to six months imprisonment for criminal contempt can be imposed on any person found guilty of intentionally violating a condition of release after an expedited non-jury hearing "in accordance with principles applicable to proceedings for criminal contempt." There is nothing to suggest Congress intended the penalty under § 23–1328 to be imposed pursuant to the court's contempt powers. Congress treated the issue separately and limited the extent of that power. Where the sanction for criminal contempt is more than six months, due process renders the criminal act triable by a jury so that the defendant can have an opportunity to meet the charges by way of defense or explanation. *See Browner v. District of Columbia,* 549 A.2d 1107, 1111 (D.C.1988) (citing *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975)); *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Speight was given a

sentence far in excess of the maximum authorized for violating a condition of his release without any opportunity to "meet the charges against him" regarding his innocence of the first offense. Even assuming his second arrest and conviction constitutes an intentional violation of his release status, the solicitude given to due process for criminal contempt sanctions in excess of six months, considered "extremely serious penalties," *Bloom, supra,* 391 U.S. at 207, 88 S.Ct. at 1485, surely is no less warranted when imposing, without a hearing on the issue of innocence, increased penalties up to five years imprisonment under § 23–1328.[11]

Finally, determining the existence of culpable conduct at the sentencing hearing would seem to require at least the full range of procedural protections, short of a jury trial and proof beyond a reasonable doubt. An analogous situation can be found in *Specht v. Patterson,* 386 U.S. 605, 610, 87 S.Ct. 1209, 1212–13, 18 L.Ed.2d 326 (1967). There, a Colorado statute permitted the trial judge, on the basis of a psychiatric report introduced at the sentencing hearing, to lengthen the sentence of a defendant who had been convicted of a specified sex offense if the judge found that the defendant "constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill." *Id.* at 607–08, 87 S.Ct. at 1211. The Supreme Court found the procedures to be inadequate, ruling that the defendant must be afforded all of these safeguards that are fundamental to a fair trial: "that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. And

---

**10.** *Cf. Reed v. United States,* 485 A.2d 613, 617–18 (D.C.1984) (procedure to establish prior convictions under impeachment statute, § 14–305(b), when conviction is denied by the defendant); *Oliver v. United States,* 384 A.2d 642 (D.C.1978) (evidentiary hearing required when validity of prior conviction is challenged in § 23–111 proceeding on ground of denial of sixth amendment right to counsel).

**11.** In some jurisdictions due process in sentencing requires a defendant's request for an opportunity to rebut information on which the judge relies to be granted. *See United States v. Bass,*

175 U.S.App.D.C. 282, 291 & n. 17, 535 F.2d 110, 119 & n. 17 (1976) (cases cited). This procedural step has been cited as a reason for upholding the federal sentencing guidelines against a due process challenge premised on the defendant's right to present evidence and to challenge the basis of the sentence. *See United States v. Landers,* 690 F.Supp. 615, 624 (W.D.Tenn.1988); *United States v. Alves,* 688 F.Supp. 70, 80 (W.D. Mass.1988). The Supreme Court in *Mistretta v. U.S.,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), did not address these due process claims.

there must be findings adequate to make meaningful any appeal that is allowed." *Id.* at 610, 87 S.Ct. at 1212. *Cf. In re Nelson,* 408 A.2d 1233, 1236 (D.C.1979) (in civil commitment, government must prove dangerousness by clear and convincing evidence). The analogous argument for Speight is that the legal conclusion that defendants on pretrial release present an added danger to the community must be supported by a procedurally sound factual finding of Speight's culpability in the conduct for which he was first arrested. *Specht, supra,* 386 U.S. 605, 87 S.Ct. 1209; *Tot, supra,* 319 U.S. at 469, 63 S.Ct. at 1245–46.

## II.

The recent opinion of the Supreme Court in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), provides additional support for these conclusions. The petitioners in *McMillan* challenged, on due process grounds, a Pennsylvania statute that increased the minimum sentence upon a finding of the trial judge, by a preponderance of the evidence, that the petitioners visibly possessed a firearm during the commission of the crime for which they had already been convicted. Upon conviction of a felony enumerated in the statute, the petitioners were already subject to a sentence which exceeded that required after the special finding by the trial judge. 477 U.S. at 92 n. 8, 106 S.Ct. at 2419 n. 8. The Court held that it was constitutionally permissible to treat the firearm factor as a sentencing consideration rather than as an element of the offense. *Id.* at 92, 106 S.Ct. at 2419. It identified three factors to distinguish *McMillan* from its prior decisions in *Mullaney, supra,* 421 U.S. 684, 95 S.Ct. 1881, *Winship, supra,* 397 U.S. 358, 90 S.Ct. 1068, and *Specht, supra,* 386 U.S. 605, 87 S.Ct. 1209. They include: (1) whether the enhancement factor alters the maximum sentence for the crime committed or creates a separate offense calling for a separate penalty; (2) whether the punishment is imposed for conduct that has historically required proof beyond a reasonable doubt; and (3) whether the procedures that have

been provided to the defendant for countering the enhancement factor at sentencing are adequate. *McMillan, supra,* 477 U.S. at 88–91, 106 S.Ct. at 2417–19.

To the Court the most important of these factors was the effect on sentencing. The Court stated that the argument for finding the legislative creation of a separate offense "would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment, *cf.* 18 U.S.C. § 2113(d) (providing separate and greater punishment for bank robberies accomplished through 'use of a dangerous weapon or device'), but it does not." 477 U.S. at 88, 106 S.Ct. at 2417. In distinguishing *Mullaney, supra,* 421 U.S. at 684, 95 S.Ct. at 1882, the Court stressed that the statute there subjected the convicted defendant to a sentencing differential ranging from a nominal fine to a mandatory life sentence. *Id.* In distinguishing *Specht,* a pre-*Winship* decision, the Court similarly stressed that the post-trial finding, based solely on a psychiatric report, exposed the defendant to a sentence of life imprisonment in addition to the ten year maximum for the predicate conviction of a sexual offense. *Id.* The Pennsylvania statute in *McMillan,* by contrast, did not alter the maximum penalty or create a separate offense, but only limited the sentencing judge's discretion within the range of the otherwise available maximum sentence. The Court found that this structure "gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense." *Id.* With regard to the second factor, the Court observed that petitioners did not contend that the particular 'visible possession of a firearm' "has historically been treated 'in the Anglo–American legal tradition' as requiring proof beyond a reasonable doubt, *Patterson,* [*supra* ], 432 U.S. at 226, [97 S.Ct. at 2335,] (Powell, J., dissenting)." 477 U.S. at 90, 106 S.Ct. at 2418.

The three factors which controlled the outcome in *McMillan* dominate the instant case. The D.C. statute is defensible only if the defendant's right to due process of law

is fully met at the time of sentencing. *McMillan* makes clear that under *Mullaney, Specht*, and *Winship*, the procedures upheld by the majority in Speight's case are inadequate when the defendant protests his innocence of the first offense. The mere fact of arrest and release has historically not led to the explicit and legitimate imposition of punishment, as distinct from detention necessary for the administration of criminal justice. *Cf. United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (emphasizing, in rejecting a due process challenge to the preventive detention provisions of the federal Bail Reform Act, the existence of "extensive safeguards"—including a "full blown" evidentiary hearing at which the government has the burden to demonstrate by clear and convincing evidence that detention is necessary, and a requirement that the judicial officer make written findings of fact and a statement of reasons for a decision to detain); *Schall v. Martin*, 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984); *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 1873–74, 60 L.Ed.2d 447 (1979); *United States v. Melendez–Carrion*, 790 F.2d 984, 1007–08 (2d Cir.1986). Indeed, a substantial portion of the Bill of Rights stands in direct contravention of that possibility.

A hearing at the time of sentencing may be adequate for determining an historical fact or the status or characteristics of the defendant. Determining legal guilt, in contrast, requires an examination of the complex issues of fact and law appropriate for formal trials and full constitutional protections. The release offender provisions, however, are applied without any scrutiny of the circumstances of the first arrest and without any requirement that a judge, petit jury, or grand jury have passed on the matter. The undeniable effect is the likelihood that certain individuals will undergo a substantially longer period of incarceration by the mere fact of having previously been arrested and released on the basis of presumptively innocent conduct. The goal of crime deterrence is no justification in this context because the law must presume that a defendant is innocent until proven guilty. *Winship, supra.*

As a practical matter, the release offender statute exposes defendants to increased punishment for a governmentally imposed status, and therefore establishes a "new set of upgraded felonies," *McMillan, supra,* 477 U.S. at 88, 106 S.Ct. at 2417, and misdemeanors. Contrary to the suggestion in the plurality opinion, see opinion at 128, the release offender statute is different from statutes which provide for an enhanced sentence based on a factor aggravating the underlying offense.[12] The federal firearms statute, for instance, as the plurality concedes, opinion at 129, requires that an indictment have been issued in order to enhance the sentence, a very different situation than Speight's whose additional five year sentence is based only on an arrest.[13] Again, it is no answer that the defendant's voluntary commission of the second offense is sufficient because he has assumed an obligation by embarking on pretrial release; neither Congress nor the prosecutor can have a legitimate interest in imposing such a burden without the proper procedural protections for determining the existence of an adequate, legitimate, and rational factual predicate in an individual case.

### III.

This analysis does no violence to the Congressional purpose in enacting § 23–1328 nor poses a problem for the prosecutor who has recognized, in enforcing a comparable

---

**12.** *See Jordan v. United States,* 98 U.S.App.D.C. 160, 163–64, 233 F.2d 362, 365–67, *vacated on other grounds,* 352 U.S. 904, 77 S.Ct. 151, 1 L.Ed.2d 114 (1956); *United States v. Moore,* 176 U.S.App.D.C. 309, 310–11, 540 F.2d 1088, 1089–90 (1977); *United States v. Davis,* 710 F.2d 104, 106–07 (3rd Cir.), *cert. denied,* 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983), and cases from other federal circuits cited therein.

**13.** The plurality's reliance on *District of Columbia v. Hudson, supra,* 404 A.2d at 178, is misplaced since the court specifically left open whether arrests could be a factor in sentencing. *Id.* at 178 n. 4. *See* note 5, *supra.*

federal statute, that the legislative goal can be readily accomplished in a manner consistent with constitutional protections. *See, e.g., United States v. Patterson,* 820 F.2d 1524, 1527 (9th Cir.1987) (charge of violation of bail pending appeal included in indictment).[14] The plurality's reliance on *Salerno, supra,* 481 U.S. 739, 107 S.Ct. 2095, plurality opinion at 127 n. 7, is misplaced since the D.C. statute lacks comparable procedural protections.[15] The plurality's uncritical acceptance of the Congressional assertion that the "betrayal of trust" eliminates the need for a culpability determination simply begs the question: if a defendant's first arrest did not involve culpable conduct, then there is no "betrayal of

trust." And, while the plurality acknowledges that reliance on the federal firearms act is flawed, since the element leading to additional punishment is included in the indictment and follows conviction, it can cite no case or statute that results in added punishment in excess of the maximum authorized penalty upon conviction for a crime committed while on pretrial release.

Recidivism speaks not in terms of separate offenses but rather in terms of enhanced punishment "on account of the prior conviction." *Tansimore, supra,* 355 A.2d at 803 (citations omitted). Thus, if, at the time of sentencing, there is no prior conviction unquestionably apparent "after a trial and after the accused has been

---

**14.** Similar to § 23–1328, the Comprehensive Crime Control Act of 1984, 18 U.S.C. § 3147 (1987 Supp.), provides:

A person convicted of an offense committed while [on pretrial release] shall be sentenced, in addition to the sentence prescribed for the offense to—

(1) A term of imprisonment of not less than two years and *not less than ten years if the offense is a felony;* or

(2) A term of imprisonment of not less than ninety days and not more than one year if the offense is a misdemeanor.

A *term of imprisonment under this section* shall be consecutive to any other sentence of imprisonment.

The Supreme Court has ruled that 18 U.S.C. § 3147 does not repeal by implication a judge's authority under 18 U.S.C. § 3651 (1985 & 1987 Supp.) to grant probation to such defendants. *See Rodriguez v. United States,* 480 U.S. 522, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987). The United States Court of Appeals for the District of Columbia Circuit reached a similar conclusion with respect to a defendant's rights to parole under 18 U.S.C. § 4205(b) (1982). *See United States v. Mudd,* 260 U.S.App.D.C. 117, 817 F.2d 840 (1987). In *Rodriguez* the defendant pled guilty to both the original charge and that based on her sale of heroin while on pretrial release. In *Mudd* the defendant committed the second offense while released on his own recognizance pending sentencing for two convictions. Both § 3651 and § 4205(b) have been prospectively repealed by the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1976. *See* 18 U.S.C. § 3651 note (Supp. III 1985) (effective date postponed until November 1, 1987).

The only case interpreting the constitutionality of § 3147 of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, 98 Stat. 1837, rejected a due process challenge where the bail-release status was included as a separate count in the indictment and the jury found the defendant guilty of that count. *Unit-*

*ed States v. Patterson, supra,* 820 F.2d at 1527. The government introduced at trial before a jury a certified copy of his "Bail Bond on Appeal" which was signed by judge. Count two of the indictment charged Patterson with the crime of being a felon in possession of a firearm which had previously been moved in commerce in violation of 18 U.S.C.App. § 1202(a). The indictment contained the additional allegation that he was "on post-conviction release" after conviction of the 1984 felonies. The Ninth Circuit also rejected a challenge to § 3147 on ex-post facto grounds. *Id.*

Neither *United States v. Alafriz,* 690 F.Supp. 1303, 1310 (S.D.N.Y.1988), cited by the plurality opinion at 129 n. 13, nor *United States v. Mesa,* 641 F.Supp. 796, 798 (S.D.Fla.1986), plurality opinion at 129 advance the majority's position. *Alafriz,* involving a challenge to the federal sentencing guidelines, does not address the issue raised by Speight, and the analysis in *Mesa* relies on the fallacious analogy adopted in *Tansimore, supra,* 355 A.2d 799, to repeat offender statutes.

**15.** *United States v. Rodriguez,* 794 F.2d 24 (2d Cir.1986), *rev'd on other grounds,* 480 U.S. 522, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987), also is of no assistance to the plurality's holding. See plurality opinion at 129 n. 14. *Rodriguez,* again, was analyzing the Comprehensive Crime Control Act and held only that probation is not available under the Act, which mandates a two-year minimum term of imprisonment for defendants convicted of committing an offense while on pretrial release. Nor is *United States v. Grayson,* 438 U.S. 41, 50–51, 98 S.Ct. 2610, 2615–16, 57 L.Ed.2d 582 (1978), of assistance to the plurality. *See* plurality opinion at 128. In *Grayson,* the sentencing judge viewed the defendant's false testimony at trial a sentencing factor in imposing a sentence within the maximum term allowed. *Id.* at 44 & n. 2, 98 S.Ct. at 2612 & n. 2.

found guilty," the penalty for recidivism cannot be imposed. It is the repetition of criminal conduct—a crime committed while on bail for another crime—that is recidivism.[16]

## IV.

Regrettably, since no less than personal liberty is at stake, the majority has skirted the issue presented. There is no dispute that Congress could rationally include additional punishment should follow arrest. Sentencing discretion is not at issue. The only issue is what due process protections must be afforded to a defendant before additional punishment can be imposed. Until today, no court has suggested arrest status suffices.

Surely it is noteworthy that previously the court had upheld the statute against constitutional attack by reliance on an analogy, albeit faulty, to repeat offender statutes in which a defendant had received full constitutional protections at the trial leading to the first conviction before an enhanced repeat offender sentence could be imposed. *See* note 8, *supra*. Abandoning that approach, as it must, the plurality relies on an equally faulty ground that because a statutory scheme has a rational basis it is immune from constitutional due process attack even when an individual defendant maintains that the express assumptions underlying the statutory scheme are

inapplicable. Affording due process protections as elsewhere have clearly been required in order to impose punishment in excess of the express crime of which a defendant has been convicted presents no obstacle to the accomplishment of the Congressional purpose, as is clear from the federal pretrial release statute enacted by Congress subsequent to the D.C. pretrial release statute, and assures no less than protection of our individual liberties.

## APPENDIX

The following Parts II and III were contained in the panel opinion on December 9, 1987 (footnotes numbered as in the original), but not published in the Atlantic Reporter.

## II

■ Speight first contends that he had not been "charged," within the meaning of D.C.Code § 23–1321(a) (1986 Supp.),[5] at the time of the cocaine arrest, with the crime of carrying a dangerous weapon, and indeed was never so charged. He contends that a person is not "charged" with a felony offense until indicted by a grand jury, and that, under the proper interpretation of § 1321, arrests, presentments, and pretrial hearings merely constitute "accusations." If so, an additional sentence under § 23–1328[6] cannot be imposed. Speight relies on the argument that Congress incor-

---

**16.** As to the plurality's reliance on *State v. Webb,* 309 N.C. 549, 308 S.E.2d 252 (1983), "disdain for the law" is not a crime, nor is it an acceptable reason for imposing punishment beyond that authorized by law, and nothing in *Webb* suggests that the North Carolina statute, requiring consideration of bail release offenses at the time of sentencing, authorized the imposition of a penalty in excess of the maximum sentence for the crime of which the defendant had been convicted.

**5.** Section 23–1321(a) provides in pertinent part: Any person charged with an offense ... shall, at his appearance before a judicial officer, be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond....

**6.** Section 23–1328 provides in pertinent part:
   (a) Any person convicted of an offense committed while released pursuant to section 23–1321 shall be subject to the following pen-

alties in addition to any other applicable penalties:
   (1) A term of imprisonment of not less than one year and not more than five years if convicted of committing a felony while so released....
18 U.S.C. § 3147 (1987 Supp.) similarly provides that
   [a] person convicted of an offense committed while [on pretrial release] shall be sentenced, in addition to the sentence prescribed for the offense to—
   (1) A term of imprisonment of not less than two years and not less than ten years if the offense is a felony; or
   (2) A term of imprisonment of not less than ninety days and not more than one year if the offense is a misdemeanor.
A term of imprisonment under this section shall be consecutive to any other sentence of imprisonment.
The Supreme Court has recently ruled that § 18–3147 does not repeal by implication a

porated into § 23–1321 a traditional accepted judicial usage of the word "charged" in constitutional law. His authority consists of the usage of the word "charge" in several cases. For example, in *Costello v. United States,* 350 U.S. 359, 362 [, 76 S.Ct. 406, 408, 100 L.Ed. 397] (1956), the Court wrote that an indictment by a grand jury "is the sole method for preferring charges in serious criminal cases." *See also Stirone v. United States,* 361 U.S. 212, 217 [, 80 S.Ct. 270, 273, 4 L.Ed.2d 252] (1960) (no trial on "charges that are not made in the indictment against him"); *Tot v. United States,* 319 U.S. 463, 466 [, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519] (1943) ("indictment charges an accused"); *Williams v. United States,* 404 A.2d 189 (D.C.1979) (all essential elements); *Wittenberg v. United States,* 366 A.2d 128 (D.C.1976).

Speight's reliance on these cases is not dispositive for our purposes. The opinions did not intend to define the word charge in

the cited statements; they were clearly addressing other issues. Most importantly, they did not restrict the word "charge" to the indictment process. The fact that a grand jury must indict for all elements of a crime does not mean that other entities cannot bring "charges." In countless cases courts apply the word "charge" to the prosecutor's formal decision to prosecute and to other phases of the criminal justice system. *See, e.g., Gerstein v. Pugh,* 420 U.S. 103, 105 [, 95 S.Ct. 854, 858–59, 43 L.Ed.2d 54] (1975); *Coleman v. Alabama,* 391 [399] U.S. 1, 11 [, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387] (1970) (Black, J., concurring); *Pointer v. Texas,* 380 U.S. 400, 402 [, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923] (1965) ("the preliminary hearing ... was one in which pleas to the charge could be made"). Charges can be levied and reviewed in a felony case either at presentment, at the initial appearance, or at a preliminary hearing.[7] Thus, "charged"

judge's authority under 18 U.S.C. § 3651 (1985 & 1987 Supp.) from granting probation to such defendants. *See Rodriguez v. United States,* [480 U.S. 522,] 107 S.Ct. 1391, 1392 [, 94 L.Ed.2d 533] (1987). The U.S. Court of Appeals for District of Columbia Circuit has also recently made a similar ruling with respect to a defendant's rights to parole under 18 U.S.C. § 4205(b) (1982). *See United States v. Mudd,* 260 U.S.App. D.C. 117, 817 F.2d 840 (1987). In *Rodriguez* the defendant pled guilty to both the original charge and that based on her sale of heroin while on pretrial release. In *Mudd* the defendant committed the second offense while released on his own recognizance pending sentencing for convictions for receiving stolen government property and for possessing an unregistered firearm and unregistered ammunition. Both § 3651 and § 4205(b) have been prospectively repealed by the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 98 Stat. 1976. *See* 18 U.S.C. § 3651 note (Supp. III 1985) (effective November 1, 1987); 18 U.S.C. § 4205(b) note (Supp. III 1985) (effective November 1, 1987). Congress has also prospectively removed the minimum sentencing aspects of § 3147 by deleting the phrases "not less than two years and" and "not less than ninety days and." *See* 18 U.S.C. § 3147 note (Supp. III 1985) (effective date postponed until November 1, 1987).

The only case interpreting the constitutional validity of § 3147 of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, 98 Stat. 1837, rejected a due process challenge where the bail-release status was included as an

allegation in a separate count in the indictment and the jury found the defendant guilty of that count. *United States v. Patterson,* 820 F.2d 1524, 1527 (9th Cir.1987). In that case the defendant was on bail pending appeal at the time he committed subsequent offenses for which he was convicted. The government introduced at trial before a jury a certified copy of his "Bail Bond on Appeal" which was signed by a judge.

> Count two of the indictment charged Patterson with the crime of being a felon in possession of a firearm which had previously been moved in commerce in violation of 18 U.S.C. App. § 1202(a). The indictment contained the additional allegation that he was "on postconviction release" after conviction of the 1984 felonies.

The Ninth Circuit also rejected a challenge to § 3147 on ex-post facto grounds. *Id.*

7. For example, the Bail Agency and Pretrial Detention provisions, D.C.Code § 23–1301 *et seq.* (1981) repeatedly refer to procedures and standards for handling persons "charged with an offense," *e.g.,* §§ 23–1303 (detainee interview), –1321 (general pretrial release), –1322 (general pretrial detention standards), –1323 (addict), –1325 (murder), that must routinely be employed prior to a grand jury indictment; *see also Clotterbuck v. United States,* 459 A.2d 134 (D.C.1983); *Hazel v. United States,* 483 A.2d 1157, 1158 (D.C.1984); *United States v. Edwards,* 430 A.2d 1321, 1324 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1022 [, 102 S.Ct. 1721, 72 L.Ed.2d 141] (1982).

necessarily refers to all persons arrested and formally accused of a crime by the government.

Speight's interpretation of § 23–1321 is also directly contrary to this court's reading of congressional intent in *Daniel v. United States*, 408 A.2d 1231, 1232–33 (D.C.1979) (per curiam).[8] The court there stated that "Congress was concerned about the large number of crimes committed by people on pretrial release." *Id.* at 1233 (citing S.Rep. No. 405, 91st Cong., 1st Sess. 3 (1969); H.R.Rep. No. 907, 91st Cong., 2d Sess. 82 (1970)). Congress found a demonstrable added danger to the community and sought to deter "bail recidivism"[9] by imposing greater penalties for crimes committed while on pretrial release.[10] *Id.* (citing Managers on the Part of the Senate for S.2601, 91st Cong., 2d Sess., Statement Regarding the Conference Action upon S.2601 31 (Comm.Print 1970)); *see also Tanismore v. United States*, 355 A.2d 799, 803 (D.C.1976). Speight's contention is accordingly reduced to the proposition that Congress was only concerned about post-indictment bail recidivism, a contention that is inconsistent with the stated statutory purpose.

Accordingly, we hold that the word "charged" in § 23–1321 means simply a formal accusation of the defendant, and proceed to address the constitutional issues.

### III

■ Speight contends that the release offender statute, as applied to him, violates his fifth amendment right to a grand jury indictment. He maintains that the additional five year sentence constitutes an infamous crime within the historic meaning of the fifth amendment because of the nature of the punishment. *See Green v. United States*, 356 U.S. 165, 183 [, 78 S.Ct. 632, 642, 2 L.Ed.2d 672] (1958) ("an infamous crime is one punishable by imprisonment"). Thus, he argues that since he only received a grand jury indictment for the offense of cocaine distribution, and not for the essentially separate offense of committing a felony while on pretrial release, he was denied the substantial right of having the benefit of the grand jury's "dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 686–87

---

**8.** The court looks first to the plain meaning of the words of the statute, as understood by common or contextual usage. *United States v. Bailey*, 495 A.2d 756, 760 (D.C.1985); *People's Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753–54 (D.C.1983) (en banc). Superficial clarity does not end our inquiry, "for an in-depth consideration of alternative constructions that could be ascribed to statutory language may reveal ambiguities that the court must resolve." *Id.* at 754. The court will examine legislative history and the purposes of the statute in order to explain ambiguity, to resolve apparent contradictions, or to choose between competing constructions. The use of the same word in similar legal statutes or situations can also provide evidence of legislative intent. Finally, where the statute is susceptible to more than one valid interpretation, courts tend to prefer interpretations that avoid constitutional questions. *Kent v. Dulles*, 357 U.S. 116 [, 78 S.Ct. 1113, 2 L.Ed.2d 1204] (1958).

**9.** Congress stated that:
> [N]one of the [people on pretrial release] will be particularly motivated to obey the law during the period of pretrial release. In the 50 or 60 days between arrest and trial—which is probably the minimum for serious offenses—the addict's habit will not disappear; the lifelong incorrigible will not be reformed; and the last fling phenomenon will still be present.

H.R.Rep. No. 907, 91st Cong., 2d Sess. 83 (1970).

**10.** Congress stated that:
> The actual and potential dangerousness of defendants *charged* with crime to persons and the community should be confronted.... Dangerousness should be considered in determining conditions of pretrial release.... Nor are more speedy trials itself a solution, for no matter how efficiently a busy urban court system may operate, with all the discovery motions, preliminary hearings, *grand jury proceedings*, suppression motions, and preparation of transcripts, trials cannot be expected to occur within less than sixty days. Society should not be made to suffer the unreasonable risk of additional crimes committed by dangerous defendants during this period of delay....

H.R.Rep. No. 907, 91st Cong., 2d Sess. 83 (1970) (emphasis supplied).

[, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626] (1972).[11]

By seeking to identify the pretrial release statute as a separate "infamous" crime, Speight's contention is directly contrary to precedent that binds this division. This court has rejected the proposition that § 23–1328 creates a separate offense. In *Tanismore, supra,* 355 A.2d at 803, by denying the defendant the right to a (petit) jury trial on the issue of whether he committed an offense while on release, the court necessarily held that

> [i]t is clear that the above statute pertains only to the question of punishment rather than creating a new substantive offense.... Our position is consistent with the general rule established vis-a-vis the analogous situation of repeat offender statutes. The accepted view is that these recidivist statutes do not create separate offenses, but only enhance the punishment on account of the prior conviction. *See Chandler v. Fretag,* 348 U.S. 3, 7 [, 75 S.Ct. 1, 3, 99 L.Ed. 4] (1954) [repeat offender statute]; *Graham v. West Virginia,* 224 U.S. 616, 623–24 [, 32 S.Ct. 583, 585–86, 56 L.Ed. 917] (1912) [same]; *Jackson v. United States,* 95 U.S. App.D.C. 328, 221 F.2d 883 (1955) [same].

*Id.* at 803.

The rationale behind *Tansimore* dictates that the *Tansimore* holding be applied to grand jury indictments as well as to jury trials. The court held that "certain procedural safeguards must be afforded before the heavier release offense penalty can be imposed." 355 A.2d at 803. Because the

only additional fact necessary for the application of § 23–1328 concerns pretrial release status, the court concluded that the defendant receives adequate procedural protection if the government is required to prove the facts of the defendant's identity and release status at the sentencing hearing.[12] *Id.* The date of offense is routinely incorporated in the grand jury indictment and the trial, and must be presented at the time of sentencing. As with the evidence of a prior conviction under the recidivist statute, *see United States v. Marshall,* 142 U.S.App.D.C. 167, 440 F.2d 195 (en banc) (procedures for applying recidivist statute), *cert. denied,* 400 U.S. 909 [, 91 S.Ct. 153, 27 L.Ed.2d 148] (1970); *United States v. Clemons,* 142 U.S.App.D.C. 177, 440 F.2d 205 (1970) (same), *cert. denied,* 401 U.S. 945, [91 S.Ct. 959, 28 L.Ed.2d 227] (1971), the release papers filed by the government can readily incorporate the dates of pretrial release, which are a matter of public record. Repeat or release status involves characteristics that obtain regardless of the manner in which the underlying offense is committed. The nature of the act itself is not changed; the trial court can easily assess the distinct characteristics of the defendant, and the proof thereof, at a post-trial hearing. *Compare Jordan, supra* note 4, 98 U.S.App.D.C. at 163–64, 233 F.2d at 365–67 (armed with a firearm); *United States v. Moore,* 176 U.S.App.D.C. 309, 310–11, 540 F.2d 1088, 1089–90 (1976) (age of distributee in distribution charge when punishment is increased for selling to minor). The defendant has an adequate opportunity to contest these statutory allegations. The question remains whether

11. The government's response that Speight was not entitled to a jury trial on the separate release offense is misdirected. The grand and petit juries, "their functions, and the interests which they serve, while related, are nonetheless capable of distinction." *United States v. Bukowski,* 435 F.2d 1094, 1102 (7th Cir.1970), *cert. denied,* 401 U.S. 911 [, 91 S.Ct. 874, 27 L.Ed.2d 809] (1971). For example, there is a right to a petit jury trial in serious criminal contempt cases, *Bloom v. Illinois,* 391 U.S. 194 [, 88 S.Ct. 1477, 20 L.Ed.2d 522] (1968), but not a right to a grand jury indictment. *Green, supra,* 356 U.S. at 184 [, 78 S.Ct. at 643]; *Bukowski, supra,* 435 F.2d at 1101. The grand jury also indicts on the

basis of probable cause and may consider hearsay, *Costello, supra,* 350 U.S. at 363, [76 S.Ct. at 408–09,] or evidence seized in violation of the fourth amendment, *United States v. Calandra,* 414 U.S. 338, 354 [, 94 S.Ct. 613, 623, 38 L.Ed.2d 561] (1974), while at the same time possessing the power to refuse to indict on the grounds of government misconduct.

12. The government filed the appropriate release papers, and incorporated the date of the second offense (regarding cocaine) at trial and sentencing. Speight did not contest these facts in the trial court and does not now contest them.

the statute's definition of the elements of the crime meets constitutional requirements when more than release status is at issue. *See* Part V, *infra.*